# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP2483-CR |
| COMPLETE TITLE: | State of Wisconsin, |
| |         Plaintiff-Respondent, |
| |    v. |
| | Patrick H. Dalton, |
| |         Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 377 Wis. 2d 730, 902 N.W.2d 810
(2017 – unpublished)

| | |
|---|---|
| OPINION FILED: | July 3, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 12, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Washington |
|   JUDGE: | Todd K. Martens |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | ROGGENSACK, C.J., dissents, joined by GABLEMAN, J. (opinion filed). |
| | ZIEGLER, J., dissents, joined by GABLEMAN, J. (opinion filed). |
|   NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed and an oral argument by *Hannah Schieber Jurss*, assistant state public defender.

For the plaintiff-respondent, there was a brief filed and an oral argument by *David H. Perlman*, assistant attorney general, with whom on the brief was *Brad D. Schimel*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP2483-CR
(L.C. No. 2014CM117)

STATE OF WISCONSIN : IN SUPREME COURT

State of Wisconsin,

    Plaintiff-Respondent,

    v.

Patrick H. Dalton,

    Defendant-Appellant-Petitioner.

**FILED**

**JUL 3, 2018**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Reversed and cause remanded.*

¶1 ANN WALSH BRADLEY, J. The petitioner, Patrick Dalton, seeks review of an unpublished court of appeals decision affirming his judgment of conviction and sentence and upholding the circuit court's order denying his postconviction motion.[1] Dalton asserts that he is entitled to withdraw his no contest pleas because his trial counsel was ineffective for failing to

---

[1] State v. Dalton, No. 2016AP2483-CR, unpublished slip op. (Wis. Ct. App. July 19, 2017) (affirming the judgment and order of the circuit court for Washington County, Todd K. Martens, Judge).

move to suppress blood evidence collected without a warrant. In the alternative, he argues that he is entitled to resentencing because the circuit court relied on an improper sentencing factor.

¶2 Specifically, Dalton contends first that because police lacked the exigent circumstances necessary to draw his blood without a warrant, his counsel was ineffective for failing to move to suppress the evidence. He asserts next that the circuit court impermissibly lengthened his sentence for exercising his constitutional right to refuse a warrantless blood draw.

¶3 We conclude that exigent circumstances existed, permitting police to draw Dalton's blood absent a warrant. Accordingly, his counsel was not ineffective for failing to file a meritless motion to suppress.

¶4 We further conclude that the circuit court violated Birchfield v. North Dakota, 579 U.S. ___, 136 S. Ct. 2160, 2185-86 (2016),[2] by explicitly subjecting Dalton to a more severe criminal penalty because he refused to provide a blood sample absent a warrant. Consequently, Dalton is entitled to resentencing.

¶5 Accordingly, although we agree with the court of appeals that Dalton's counsel was not ineffective, we

---

[2] As relevant here, the Supreme Court in Birchfield determined that it is impermissible to impose criminal penalties for refusing to submit to a warrantless blood draw. Birchfield v. North Dakota, 579 U.S. ___, 136 S. Ct. 2160, 2185-86 (2016).

nevertheless reverse and remand to the circuit court for resentencing.

I

¶6 This case arises from a single car crash in the Village of Richfield in which Patrick Dalton (Dalton) was the driver. After driving erratically and at speeds reaching approximately one hundred miles per hour, Dalton crashed his car into a ditch. Both Dalton and his passenger were injured.

¶7 Washington County sheriff's deputies responded to the scene of the crash at 10:07 p.m. on December 12, 2013. Upon arrival, the passenger in the car informed deputies that Dalton had been drinking and that Dalton was the driver of the car. When law enforcement arrived, Dalton was lying on the roof of the car, unconscious, and smelled of alcohol. Dalton was taken about a mile from the crash scene by ambulance, where he awaited the arrival of a Flight for Life helicopter.

¶8 After Dalton was driven away from the scene, Washington County Deputy Dirk Stolz remained and took the lead in investigating the scene. Deputy Stolz was accompanied by Deputies Charles Vanderheiden, Chad Polinske, and Michael Anderson. They were later joined by Lieutenant Robert Martin. Ten to 15 members of the Richfield Fire Department were also present, working to keep the area safe and blocking traffic to ensure officer safety.

¶9 While Deputy Polinske interviewed witnesses, Deputy Vanderheiden left the crash scene to await the helicopter with Dalton, who remained in the ambulance and unconscious. Deputy

3

Venderheiden arrived at the landing zone at 10:37 p.m. and testified that it took about 45 minutes from the time he got there for the helicopter to arrive. Upon its arrival, Flight for Life airlifted Dalton from the landing zone to Froedtert Hospital in Milwaukee.

¶10 Subsequent to Dalton being airlifted from the scene, Deputy Vanderheiden traveled to Community Memorial Hospital in Menomonee Falls to speak with the passenger. Leaving the crash scene at 11:14 p.m., Deputy Stolz drove to Froedtert Hospital in Milwaukee to reconnect with Dalton.

¶11 When Deputy Stolz arrived at Froedtert Hospital at 11:54 p.m., Dalton was receiving emergency treatment. After the treatment was complete, Deputy Stolz was able to speak to Dalton, who had regained consciousness.

¶12 Upon interacting with Dalton, Deputy Stolz observed that Dalton had glassy bloodshot eyes and the strong odor of alcohol emanating from his mouth. Dalton also appeared lethargic.

¶13 At approximately 12:05 a.m., nearly two hours after being dispatched to the crash scene, Deputy Stolz informed Dalton that he was under arrest and read Dalton the "Informing the Accused" form.[3] Dalton refused a blood draw.

---

[3] The Informing the Accused form in the record indicates that Deputy Stolz read to Dalton the following:

Under Wisconsin's Implied Consent Law, I am required to read this notice to you:

(continued)

4

¶14 Believing that there were exigent circumstances that would obviate the need to obtain a warrant, Deputy Stolz then instructed a nurse to draw Dalton's blood, which was

You have either been arrested for an offense that involves driving or operating a motor vehicle while under the influence of alcohol or drugs, or both, or you are the operator of a vehicle that was involved in an accident that caused the death of, great bodily harm to, or substantial bodily harm to a person, or you are suspected of driving or being on duty time with respect to a commercial motor vehicle after consuming an intoxicating beverage.

This law enforcement agency now wants to test one or more samples of your breath, blood or urine to determine the concentration of alcohol or drugs in your system. If any test shows more alcohol in your system than the law permits while driving, your operating privilege will be suspended. If you refuse to take any test that this agency requests, your operating privilege will be revoked and you will be subject to other penalties. The test results or the fact that you refused testing can be used against you in court.

If you take all the requested tests, you may choose to take further tests. You may take the alternative test that this law enforcement agency provides free of charge. You also may have a test conducted by a qualified person of your choice at your expense. You, however, will have to make your own arrangements for that test.

If you have a commercial driver license or were operating a commercial motor vehicle, other consequences may result from positive test results or from refusing testing, such as being placed out of service or disqualified.

In addition, your operating privileges will also be suspended if a detectable amount of a restricted controlled substance is in your blood.

5

accomplished at 12:14 a.m. A subsequent blood test indicated that Dalton's blood alcohol content was 0.238 grams per 100 milliliters, nearly three times the legal limit of 0.08.

¶15 At the time Deputy Stolz read Dalton the Informing the Accused form, there were nine deputy sheriffs on duty in Washington County, along with one supervisor. Several of those who were present at the crash scene left and proceeded directly to other incidents that had taken place in the county that night requiring immediate attention.

¶16 Deputy Polinske, who had initially responded to the crash scene, ended his work day at 11:00 p.m. Deputy Anderson arrived on the scene at 10:15 p.m. and was cleared to leave at 11:42 p.m. He and one other deputy were subsequently dispatched to an auto theft call in the Village of Richfield.

¶17 Lieutenant Martin arrived at the scene at 11:01 p.m. and was cleared to leave at 11:46 p.m. After leaving the crash site he proceeded immediately to another auto accident that involved personal injury in which the driver had fled the scene, the vehicle was in the middle of the road, and power poles were downed. Three additional deputies accompanied Lieutenant Martin to this scene.

¶18 With Deputy Stolz in Milwaukee attending to Dalton and Deputy Vanderheiden in Menomonee Falls with the passenger, only two deputies were left to cover all of Washington County. One of these deputies was assigned to the northern half of the 432 square mile county, while the other was assigned to the southern half.

¶19 Dalton was ultimately charged with three offenses: operating while intoxicated (OWI) as a second offense, operating with a prohibited alcohol concentration (PAC) as a second offense, and operating after revocation (OAR). Dalton entered no contest pleas to the OWI and OAR charges, and the PAC charge was dismissed and read in.[4] The case proceeded directly to sentencing.

¶20 At sentencing, the circuit court heard argument from the State and Dalton's counsel, as well as a brief statement from Dalton himself. In pronouncing its sentence, the circuit court observed the nature of the offense, addressing Dalton:

> You certainly were driving like a maniac this night, and you were extremely uncooperative with the officers. You could have killed your friend, you could have killed yourself, or you could have killed someone completely innocent, and you acted in total disregard of those risks, endangering anyone else who was on the road at the time.

¶21 The circuit then proceeded to address Dalton's refusal to submit to a blood test:

> The other thing you did is anybody who drives a motor vehicle in Wisconsin impliedly consents to a blood or breath draw after they're arrested. And you were arrested, and you disregarded that, and you will be punished for that today. You don't have the right not

---

[4] When the State and a defendant agree that charges will be read in, those charges are expected to be considered at sentencing. State v. Frey, 2012 WI 99, ¶68, 343 Wis. 2d 358, 817 N.W.2d 436. The defendant understands that the read-in charges could increase the sentence up to the maximum that the defendant could receive for the conviction in exchange for the promise not to prosecute those additional offenses. Id.

to consent. And that's going to result in a higher sentence for you.

Dalton was sentenced to 180 days in jail on the OWI count and 90 days on the OAR count, to be served consecutively.

¶22 Dalton filed a postconviction motion seeking to withdraw his no contest pleas. He asserted that his counsel was ineffective for failing to file a motion to suppress the evidence resulting from the warrantless blood draw. In the event his ineffective assistance of counsel claim proved unsuccessful, he alternatively sought resentencing. He contended that the circuit court erroneously exercised its discretion by explicitly punishing him for exercising his constitutional right to refuse a warrantless blood draw.

¶23 The circuit court denied Dalton's motion for plea withdrawal without holding an evidentiary hearing. It concluded "that exigent circumstances justified the warrantless blood draw in this case" and that therefore "trial counsel is not ineffective for failing to file a meritless motion[.]"

¶24 Dalton's motion for resentencing was also denied. In denying the motion, the circuit court stated, "everybody knows a court may not punish a person for exercise of the constitutional right, a right to trial, right to remain silent, but there is no right to refuse, so the [c]ourt has discretion and I think [has] the responsibility to consider a refusal an aggravating factor in sentencing an offender accordingly."

¶25 Dalton appealed both the denial of his plea withdrawal motion and his motion for resentencing. During the pendency of

the appeal, the United States Supreme Court decided Birchfield, 136 S. Ct. 2160.

¶26 The court of appeals reversed the circuit court. See State v. Dalton, No. 2016AP6-CR, unpublished slip op. (Wis. Ct. App. July 20, 2016) (Dalton I). It remanded the case to the circuit court for a Machner[5] hearing and directed the circuit court to address Dalton's claim for resentencing in light of Birchfield.

¶27 On remand, the circuit court held a Machner hearing, where Dalton's trial counsel testified. Counsel stated that prior to entering his pleas, Dalton had raised concerns about the fact that the police had taken his blood without a warrant. Counsel researched the issue and wrote a memo for her file. In discussing with Dalton whether to file a motion to suppress, counsel informed him that she "did not believe there was a basis for it, and based on reviewing the discovery in conjunction with the case law, and the facts surrounding the case, we talked about it and determined there was not a basis for suppressing the blood."

¶28 Following the Machner hearing, the circuit court again denied Dalton's motion to withdraw his pleas, concluding that exigent circumstances were present. In making this decision, it observed:

---

[5] See State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

This was a complicated and fluid situation. There's potentially life-threatening injuries to the Defendant, injuries to another individual. Sounds like a chaotic night in Washington County in terms of the need for law enforcement work in a variety of contexts and relatively serious incidents. In addition to the responsibilities the deputy had here for the traffic stop, he had to secure the accident, examine the scene, talk to witnesses, help get the Defendant out of the vehicle, get him into an ambulance, arrange for transport by helicopter, and then follow him down there promptly, and had to wait for him to get [] medical clearance before he could have contact with him. And this happened outside of Washington County. These are highly unusual factors. These are the kind of factors that are appropriate to consider on a case-by-case basis in making a determination about whether exigent circumstances exist.

¶29 With regard to counsel's decision not to file a motion to suppress, the circuit court stated: "[counsel] considered the propriety of a motion to suppress here. She decided not to file one, because she didn't think it had legal merit. She talked to the Defendant about it before deciding." The circuit court viewed counsel's decision as "the result of an exercise of reasonable professional judgment" and determined that her assistance was "not ineffective for failing to file a meritless motion."

¶30 Further, the circuit court determined that Birchfield had no effect on its earlier sentencing decision. It found Birchfield distinguishable from this case because "Wisconsin doesn't criminalize a refusal." In the circuit court's view, "[i]ncreasing a punishment of a defendant because of his refusal is not the same as making that refusal a crime . . . ."

10

Accordingly, the circuit court denied the motion for resentencing.

¶31 Dalton again appealed, renewing his arguments that he is entitled to withdraw his plea due to ineffective assistance of counsel and that he is entitled to resentencing pursuant to Birchfield. The court of appeals affirmed the circuit court, concluding that "exigent circumstances existed that justified the warrantless draw of [Dalton's] blood, and the circuit court did not err in considering Dalton's refusal to the blood draw as an aggravating factor in sentencing." State v. Dalton, No. 2016AP2483-CR, unpublished slip op., ¶1 (Wis. Ct. App. July 19, 2017) (Dalton II).

II

¶32 This case presents Dalton's claim of ineffective assistance of counsel. For a claim of ineffective assistance of counsel to be successful, a defendant must demonstrate both that (1) counsel's representation was deficient; and (2) the deficiency was prejudicial. State v. Maloney, 2005 WI 74, ¶14, 281 Wis. 2d 595, 698 N.W.2d 583 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). We need not address both components of the inquiry if the defendant makes an insufficient showing on one. Id.

¶33 Appellate review of an ineffective assistance of counsel claim is a mixed question of law and fact. State v. Erickson, 227 Wis. 2d 758, ¶21, 596 N.W.2d 749 (1999). The circuit court's findings of fact will not be disturbed unless they are clearly erroneous. Id. However, the ultimate

11

determination of whether the attorney's performance falls below the constitutional minimum is a question of law we review independently of the determinations rendered by the circuit court and court of appeals. Id.

¶34 To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances. State v. Carter, 2010 WI 40, ¶22, 324 Wis. 2d 640, 782 N.W.2d 695 (citing Strickland, 466 U.S. at 688). Counsel has a duty to reasonably investigate or to make a reasonable decision that renders particular investigations unnecessary. Carter, 324 Wis. 2d 640, ¶23.

¶35 In evaluating counsel's performance, this court is highly deferential to counsel's strategic decisions. State v. Balliette, 2011 WI 79, ¶26, 336 Wis. 2d 358, 805 N.W.2d 334. Counsel's performance need not be perfect, or even very good, to be constitutionally adequate. State v. Thiel, 2003 WI 111, ¶19, 264 Wis. 2d 571, 665 N.W.2d 305.

¶36 We are also asked to determine whether the circuit court erroneously exercised its discretion at sentencing. A circuit court's sentence is a discretionary decision. McCleary v. State, 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971). On appeal, review is limited to determining if discretion was erroneously exercised. State v. Gallion, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197. An exercise of discretion is erroneous if it is based on an error of fact or law. Zarder v. Humama Ins. Co., 2010 WI 35, ¶21, 324 Wis. 2d 325, 782

12

N.W.2d 682. Additionally, a circuit court erroneously exercises its sentencing discretion when it "actually relies on clearly irrelevant or improper factors." State v. Alexander, 2015 WI 6, ¶17, 360 Wis. 2d 292, 858 N.W.2d 662 (quoting State v. Harris, 2010 WI 79, ¶66, 326 Wis. 2d 685, 786 N.W.2d 409).

III

¶37 We begin by setting forth the principles of Fourth Amendment law that govern blood draws in OWI cases. Next we apply those principles to the facts of this case, examining Dalton's contention that his counsel was ineffective for failing to file a motion to suppress the results of the warrantless blood draw. We then turn to Dalton's request for resentencing due to the circuit court's alleged violation of Birchfield.

A

¶38 The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect against unreasonable searches and seizures.[6] State v. Eason,

---

[6] The Fourth Amendment to the United States Constitution sets forth:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath of affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV. Article I, Section 11 of the Wisconsin Constitution contains substantially the same language. See State v. Scull, 2015 WI 22, ¶18 n.3, 361 Wis. 2d 288, 862 N.W.2d 562.

13

2001 WI 98, ¶16, 245 Wis. 2d 206, 629 N.W.2d 625.  Warrantless searches are presumptively unreasonable unless an exception to the warrant requirement applies.  State v. Tullberg, 2014 WI 134, ¶30, 359 Wis. 2d 421, 857 N.W.2d 120 (citations omitted).

¶39 An exception to the warrant requirement applies when there are exigent circumstances, i.e. if the need for a search is urgent and there is insufficient time to obtain a warrant. Id.  There are four circumstances which, when measured against the time needed to obtain a warrant, constitute the exigent circumstances required for a warrantless search:  (1) an arrest made in "hot pursuit," (2) a threat to safety of a suspect or others, (3) a risk that evidence will be destroyed, and (4) a likelihood that the suspect will flee.  State v. Hughes, 2000 WI 24, ¶25, 233 Wis. 2d 280, 607 N.W.2d 621.

¶40 In an OWI case, the natural dissipation of alcohol in the bloodstream may present a risk that evidence will be destroyed and may therefore support a finding of exigency in a specific case.  Missouri v. McNeely, 569 U.S. 141, 156 (2013). "While experts can work backwards from the BAC at the time the sample was taken to determine the BAC at the time of the alleged offense, longer intervals may raise questions about the accuracy of the calculation."  Id.  For this reason, exigent circumstances to justify a warrantless blood draw "may arise in the regular course of law enforcement due to delays from the warrant application process."  Id.

¶41 Evidentiary rules reflect the fact that blood tests decrease in accuracy as more time passes.  Results of a blood

test are automatically admissible to prove intoxication or demonstrate a prohibited alcohol concentration "if the sample was taken within 3 hours after the event to be proved." Wis. Stat. § 885.235(1g) (2013-14).[7] After this three-hour window, the evidence "is admissible only if expert testimony establishes its probative value and may be given prima facie effect only if the effect is established by expert testimony." § 885.235(3).

¶42 Yet the dissipation of alcohol in the blood does not create an exigency per se. McNeely, 569 U.S. at 144. Rather, "[w]hether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." Id. at 156.

¶43 The test for determining the existence of exigent circumstances is objective. Tullberg, 359 Wis. 2d 421, ¶41. Courts must determine whether the police officers under the circumstances known to them at the time reasonably believed that a delay in procuring a warrant would risk the destruction of evidence. Id. (quoting State v. Robinson, 2010 WI 80, ¶30, 327 Wis. 2d 302, 786 N.W.2d 463).

B

¶44 Here the totality of the circumstances amounted to, in the words of the circuit court, a "complicated and fluid situation" and a "chaotic night in Washington County." Although McNeely establishes that exigent circumstances "may arise in the

---

[7] All subsequent references to the Wisconsin statutes are to the 2013-14 version unless otherwise indicated.

regular course of law enforcement due to delays from the warrant application process[,]" 569 U.S. at 156, the circumstances with which law enforcement officers were presented in this case went well beyond the "regular course of law enforcement."

¶45 Events on the evening in question presented the officers with many moving parts that inform our analysis. First, there were two injured people who needed urgent medical attention. A law enforcement officer "who is confronted with an accident scene[] should first attend to the emergency circumstances at hand." Tullberg, 359 Wis. 2d 421, ¶49. The officers' decision to tend to Dalton and his passenger's medical needs at the expense of requesting a warrant was certainly reasonable.

¶46 Second, there was a need to examine and secure the scene. An officer's responsibilities at an accident scene include securing evidence and ensuring the safety of those traveling on the road near and through the scene. State v. Howes, 2017 WI 18, ¶46, 373 Wis. 2d 468, 893 N.W.2d 812. That the safety of passersby would take precedence over applying for a warrant is, again, reasonable.

¶47 Third, it was imperative that law enforcement speak with Dalton's passenger while events were fresh in his mind. Just as alcohol dissipates in the blood, the memories of witnesses fade. Interviewing witnesses can give officers necessary information to determine whether they have probable cause for a warrant and therefore may be a necessary prerequisite to a warrant application. Accordingly, it was

16

reasonable for Deputy Vanderheiden to drive to the hospital in Menomonee Falls to speak with the passenger before applying for a warrant for Dalton's blood.

¶48 Finally, the crash at issue here was not the only incident requiring law enforcement attention that evening. Four officers were needed to respond to an accident involving personal injury, a fleeing driver, a vehicle in the middle of the road, and downed power poles. Two others were dispatched to an auto theft. This left two deputies to patrol the entirety of Washington County, one assigned to the northern half and one to the southern half of the 432 square mile county. Given these other incidents, law enforcement's actions were certainly reasonable under the circumstances.

¶49 This court is not in the business of second-guessing law enforcement's reasonable allocation of resources in a complex and evolving situation. See U.S. v. Sokolow, 490 U.S. 1, 11 (1989) (explaining that courts do not "indulge in unrealistic second-guessing" of police's "swift, on-the-spot decisions.") When presented with multifaceted and chaotic circumstances like those presented here, law enforcement needs flexibility to determine its priorities.

¶50 Dalton essentially contends that officers should have prioritized arresting him over his medical needs and the safety of the scene, not to mention the additional happenings in the county. His assertion is unpersuasive. Police serve a dual purpose at an accident scene. They are present to investigate the cause of the accident and gather evidence of wrongdoing, but

17

they are also there as first responders to injuries. See 3 Wayne R. LaFave, Search & Seizure § 6.6 (5th ed. 2012) ("The police have complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses[,]" including "aid[ing] individuals who are in danger of physical harm" and "provid[ing] other services on an emergency basis.").

¶51 The touchstone of the Fourth Amendment is reasonableness. Ohio v. Robinette, 519 U.S. 33, 39 (1996). Officers' prioritizing safety and medical needs over a warrant application when presented with these circumstances was reasonable.

¶52 Given the surrounding circumstances, the dissipation of alcohol in Dalton's blood and the rapidly closing three-hour window to accomplish a presumptively admissible and accurate blood draw, Deputy Stolz was presented with an exigent circumstance. Wis. Stat. § 885.235(1g). Such events gave rise to a reasonable belief that a delay in procuring a warrant would risk the destruction of evidence.[8] See Tullberg, 359 Wis. 2d 421, ¶41.

---

[8] We observe also that the record reflects that at the time of these events, Washington County did not have a procedure in place for warrants to be fully completed by email or phone. Deputy Vanderheiden testified that Washington County's then-existing protocol did not include emailing a search warrant to a judge, conducting a telephonic search warrant, or faxing a warrant application. Rather, the protocol required an in-person meeting with the judge that, according to Deputy Vanderheiden's testimony, would take about ten minutes.

(continued)

18

¶53 Consequently, a motion to suppress the blood evidence would have been meritless, and the failure to file it does not constitute deficient performance.[9]  State v. Cummings, 199 Wis. 2d 721, 747 n.10, 546 N.W.2d 406.  Because we determine that Dalton's counsel was not deficient, we need not address the prejudice prong of the analysis.  State v. Breitzman, 2017 WI 100, ¶81, 378 Wis. 2d 431, 904 N.W.2d 93.

¶54 We therefore conclude that exigent circumstances existed, permitting police to draw Dalton's blood absent a warrant.  Accordingly, his counsel was not ineffective for failing to file a meritless motion to suppress.

IV

¶55 Having determined that Dalton's counsel was not ineffective, we turn next to Dalton's contention that the circuit court erroneously exercised its discretion at sentencing.  Specifically, Dalton argues that the circuit court impermissibly lengthened his sentence because he refused a

---

Accordingly, Deputy Stolz testified that in order to obtain a warrant, he would have needed to fill out a form and contact the judge by phone.  The judge would then direct him to an in-person meeting place.  Thus, we consider Washington County's protocol at the time of this incident as part of the totality of the circumstances.

[9] Further, Dalton's trial counsel diligently researched the legal issue presented.  The record reflects that Dalton's trial counsel wrote a memo for her file on the issue of suppressing the blood draw evidence.  She concluded that there was no basis for such a motion, and after discussing the issue with Dalton, did not proceed with filing one.

warrantless blood draw, thereby violating Birchfield, 136 S. Ct. 2160.

¶56 A circuit court must set forth the reasons for its sentence on the record. Wis. Stat. § 973.017(10m); Gallion, 270 Wis. 2d 535, ¶4. In crafting a sentence, circuit courts are to consider the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant. Gallion, 270 Wis. 2d 535, ¶44. A circuit court erroneously exercises its discretion when it bases its decision on an error of law or fact. Zarder, 324 Wis. 2d 325, ¶21.

¶57 In Birchfield, the United States Supreme Court considered whether a law making "it a crime for a motorist to refuse to be tested after being lawfully arrested for driving while impaired" violates the Fourth Amendment's proscription against unreasonable searches and seizures. 136 S. Ct. at 2166-67. The Court concluded "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Id. at 2186.

¶58 Moving to the final issue in its analysis, the Birchfield court acknowledged that "prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." Id. at 2185. Yet, the court emphasized that criminal penalties may not be imposed for a refusal. "It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test." Id. "There must be a

20

limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." Id.

¶59 In sum, Birchfield dictates that criminal penalties may not be imposed for the refusal to submit to a blood test. 136 S. Ct. at 2185. A lengthier jail sentence is certainly a criminal penalty. See Doering v. WEA Ins. Grp., 193 Wis. 2d 118, 141, 532 N.W.2d 432 (1995) (referring to imprisonment as a criminal penalty); State v. Peterson, 104 Wis. 2d 616, 621, 312 N.W.2d 784 (1981) (same).

¶60 In setting forth the reasons for its sentence on the record, the circuit court stated in relevant part:

> The other thing you did is anybody who drives a motor vehicle in Wisconsin impliedly consents to a blood or breath draw after they're arrested. And you were arrested, and you disregarded that, and you will be punished for that today. You don't have the right not to consent. And that's going to result in a higher sentence for you.

It was thus definitive in its intent to give Dalton a longer sentence for the sole reason that he refused to submit to a blood test. This is a violation of Birchfield.

¶61 Pursuant to the circuit court's unequivocal sentencing remarks, Dalton was criminally punished for exercising his

constitutional right.[10] Established case law indicates that this is impermissible. Harman v. Forssenius, 380 U.S. 528, 540 (1965); Buckner v. State, 56 Wis. 2d 539, 550, 202 N.W.2d 406 (1972) (explaining that "[a] defendant cannot receive a harsher sentence solely because he availed himself of one of his constitutional rights."); see also Kubart v. State, 70 Wis. 2d 94, 97, 233 N.W.2d 404 (1975) ("A defendant cannot receive a harsher sentence solely because he has availed himself of the important constitutional right of trial by jury.").

¶62 The State attempts to avoid this conclusion by contending that refusal to submit to a blood test is not a stand-alone crime in Wisconsin. It also asserts that any increase in a sentence within the statutorily prescribed range does not morph a sentencing consideration into a criminal penalty. We find each of these contentions unconvincing.

¶63 As to the State's first argument, the fact that refusal is not a stand-alone crime does not alter our analysis.[11]

---

[10] Chief Justice Roggensack's dissent's reliance on South Dakota v. Neville, 459 U.S. 553, 560 n.10 (1983), is misplaced. Neville was decided pre-McNeely and pre-Birchfield. Both McNeely and Birchfield have had a significant effect on drunk driving law, and highlight the constitutional nature of a blood draw. Both cases analyze breath and blood tests as Fourth Amendment searches and appear to supersede the statement from the Fifth Amendment Neville case on which Chief Justice Roggensack's dissent relies.

[11] The circuit court distinguished Birchfield on the basis that Wisconsin does not criminalize refusal. See supra, ¶30. For the same reasons we refute the State's argument here, we find the circuit court's distinction inapt.

This is not a distinction the Birchfield Court drew. Although Birchfield states that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense[,]" it also addresses the wider impermissibility of criminal penalties for refusal, not only criminal charges. See Birchfield, 136 S. Ct. at 2185-86.

¶64 Dalton's sentencing transcript indicates that the circuit court's comments were straightforward and unequivocal. The circuit court plainly signaled that it was giving Dalton a harsher penalty because of his refusal.[12] The fact that Dalton could not be charged with a separate crime does not change the fact that he explicitly received a stiffer sentence based solely on his refusal to submit to an evidentiary blood test.

¶65 Second, the State asserts that refusal is a legitimate sentencing consideration because it reflects on the character of the defendant, and it may be taken into account as long as it does not push the punishment above the statutorily allowed maximum for OWI. Accepting the State's argument would render the limitations of Buckner and Kubart a nullity. Taken to its

---

[12] The dissents disregard the circuit court's unambiguous words, instead insisting that the circuit court considered Dalton's refusal to submit to a blood draw as a factor demonstrating Dalton's disregard of the law. See Chief Justice Roggensack's dissent, ¶96; Justice Ziegler's dissent, ¶¶104-05. The record does not bear out their assertion. The circuit court stated, "You don't have the right not to consent. And that's going to result in a higher sentence for you." The causal link between the Dalton's refusal and his lengthier sentence could not have been made more apparent.

logical extreme, the State's argument would allow a circuit court to increase a sentence because a defendant exercised the right to a jury trial, did not consent to a search of his home, or exercised his right to remain silent, as long as the sentence is within the statutory range. Contrarily, our case law indicates that a defendant may not be punished in this manner.

¶66 The Birchfield court recognized that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads." 136 S. Ct. at 2185. The limitation it established directs: no criminal penalties may be imposed for refusal. Here the record demonstrates that Dalton was criminally penalized for his refusal to submit to a blood draw. By explicitly punishing Dalton for refusal, the circuit court violated Birchfield. In denying Dalton's postconviction motion after remand, it made an error of law by misapplying Birchfield. Such error constitutes an erroneous exercise of discretion.

¶67 We therefore conclude that the circuit court violated Birchfield by explicitly subjecting Dalton to a more severe criminal penalty because he refused to provide a blood sample absent a warrant. Consequently, Dalton is entitled to resentencing.

V

¶68 In sum, we conclude that exigent circumstances existed, permitting police to draw Dalton's blood absent a warrant. Accordingly, his counsel was not ineffective for failing to file a meritless motion to suppress. We further

24

conclude that the circuit court violated <u>Birchfield</u> by explicitly subjecting Dalton to a more severe criminal penalty because he refused to provide a blood sample absent a warrant. Consequently, Dalton is entitled to resentencing.

¶69 Accordingly, we reverse the decision of the court of appeals, and remand to the circuit court for resentencing.

*By the Court.*—The decision of the court of appeals is reversed, and the cause remanded to the circuit court.

¶70 PATIENCE DRAKE ROGGENSACK, C.J. *(dissenting)*. The circuit court's sentencing of Patrick H. Dalton does not conflict with Birchfield v. North Dakota, 579 U.S. ___, 136 S. Ct. 2160 (2016) and is well within the circuit court's sentencing discretion. Because the majority opinion misunderstands the directive of Birchfield and expands the statutory opportunity to withdraw consent pursuant to Wis. Stat. § 343.305(4) into a constitutional right to refuse a blood draw contrary to South Dakota v. Neville, 459 U.S. 553 (1983), I respectfully dissent.

## I. BACKGROUND

¶71 The majority opinion ably narrates the circumstances surrounding Dalton's arrest and conviction for Operating While Intoxicated (OWI), second offense, and Operating After Revocation (OAR). Therefore, I shall relate only that which is necessary to assist the reader's understanding of this dissent.

¶72 Dalton was involved in a high-speed crash in which he and his passenger were seriously injured. They were transported to two different hospitals. Dalton exhibited overt signs of intoxication and Deputy Stolz arrested him for driving while intoxicated. Deputy Stolz read Dalton the Informing the Accused form and Dalton withdrew his consent to a blood draw.

¶73 Deputy Stolz asked a nurse to draw a blood sample and she did so. Dalton had a blood alcohol level of 0.238. This is nearly three times the level of 0.08 for which Dalton could have been convicted of unlawful intoxication. Wis. Stat. §§ 340.01(46m)(a) and 346.63(1)(b).

1

¶74 At sentencing after Dalton's conviction for OWI, as a second offense, and conviction for OAR, the circuit court discussed the seriousness of the accident and how Dalton could have killed his friend and himself. The court commented on his level of intoxication and the foul language he used with the arresting officer, who also had assisted in securing the med-flight that Dalton needed. The court commented on Dalton's withdrawal of consent to a blood draw as additional evidence of Dalton's disregard of his obligations under the law. The majority opinion elicits no other comment by the sentencing court that it concludes was objectionable.

## II. DISCUSSION

### A. Standard of Review

¶75 We review whether Dalton's sentencing for an OWI conviction comes within the proscriptions of Birchfield, independent of the court of appeals and circuit court's decisions while benefitting from their discussions. State v. Brereton, 2013 WI 17, ¶17, 345 Wis. 2d 563, 826 N.W.2d 369. We review a circuit court's sentencing decision under the erroneous exercise of discretion standard. State v. Alexander, 2015 WI 6, ¶16, 360 Wis. 2d 292, 858 N.W.2d 662; State v. Gallion, 2004 WI 42, ¶17, 270 Wis. 2d 535, 678 N.W.2d 197.

### B. Birchfield Principles

¶76 Birchfield is the latest United States Supreme Court decision in the saga of implied-consent laws. The Birchfield

2

decision is a combination of three cases, but I will focus on Danny Birchfield's circumstances.[1]

¶77 Coming upon Birchfield after he drove his vehicle off a North Dakota highway, a state trooper stopped to help. Birchfield, 136 S. Ct. at 2170. It soon became apparent that Birchfield was intoxicated. Id. The trooper arrested Birchfield and informed him of his obligations under North Dakota law to agree to a blood alcohol concentration (BAC) test and that refusing to submit to a blood draw would subject him to criminal penalties.[2] Id. Nevertheless, Birchfield refused. Id. He then pleaded guilty to a misdemeanor violation of the refusal statute, while contending that the Fourth Amendment prohibited criminalizing his refusal. Id. at 2170-71.

¶78 The Court explained that it granted certiorari in Birchfield and the two companion cases "in order to decide whether motorists lawfully arrested for drunk driving may be convicted of a crime or otherwise penalized for refusing to take a warrantless test measuring the alcohol in their bloodstream." Id. at 2172. The Court sharply focused on the Fourth Amendment issue. "The question, then, is whether the warrantless searches at issue here were reasonable," id. at 2173, and "how the

---

[1] The decision in Birchfield v. North Dakota, 579 U.S. ___, 136 S. Ct. 2160 (2016), addressed the contentions of Danny Birchfield, William Bernard, Jr., and Steve Beylund. Although all involved implied-consent laws, all were different. Those circumstances relating to Danny Birchfield are most relevant to my discussion.

[2] In North Dakota, criminal penalties applied to breath, blood and urine refusals. Id. at 2170.

3

search-incident-to-arrest doctrine applies to breath and blood tests incident to such arrests," id. at 2174.

¶79 Although the Court approved warrantless breath tests for those arrested for operating a vehicle while intoxicated, concluding they do not implicate any significant privacy concerns, id. at 2178, the Court concluded that blood draws did involve privacy concerns due to "significant bodily intrusions" required for blood draws, id. However, the Court also concluded that "requiring the police to obtain a warrant in every case would impose a substantial burden but no commensurate benefit." Id. at 2181-82. Although the Court concluded that "Birchfield was threatened with an unlawful search," because his refusal would be criminalized under North Dakota law, id. at 2186, the Court was less than clear about whether implied consent laws that impose civil penalties and evidentiary consequences on motorists who refuse required a warrant for a blood draw.

¶80 The Court seemed to approve blood draws "based on the driver's legally implied consent to submit to them." Id. at 2185. The Court confirmed its approval of "implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." Id. Therefore, refusal to comply with an implied-consent law's consent to submit to a blood draw could be sanctioned administratively. "Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them." Id. (emphasis added).

4

¶81 However, the Court concluded that imposing criminal penalties for withdrawing consent to a blood draw went too far. "It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test." Id. The Court then concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Id. at 2186.

¶82 Under the circumstances Dalton presents in the case before us, his refusal was not criminalized. Wis. Stat. § 343.305(4). Rather, the misdemeanor of which Dalton was convicted was a consequence of his withdrawing consent that resulted in a revocation under § 343.305(10), which then counted as his second OWI conviction pursuant to Wis. Stat. § 346.65(2)(am)2. Wis. Stat. § 343.307(1)(f). If his refusal were counted as his first OWI, there would have been no criminal penalties. § 346.65(2)(am)1.

¶83 Stated otherwise, the criminal sanction was due to Dalton's repetitive driving while intoxicated. Moving to criminal penalties because of repetitive OWI's was noted without objection in Birchfield. Id. at 2169 ("the State imposes increased mandatory minimum sentences for drunk-driving recidivists.").

¶84 The majority opinion aligns Birchfield with what it asserts is Dalton's "more severe criminal penalty because he refused to provide a blood sample absent a warrant."[3] The

---

[3] Majority op., ¶4.

"penalty" to which the majority refers was its own evaluation of the discretionary sentencing of the circuit court for Dalton's second OWI and first OAR convictions. Birchfield has nothing to do with discretionary sentencing decisions. It turns entirely on a mandatory criminal misdemeanor charge that North Dakota imposed for refusing to submit to a blood draw. Id. at 2170-71.

¶85 The majority opinion is expanding Birchfield into discretionary sentencing decisions for a repetitive OWI conviction that required a criminal penalty. See Wis. Stat. § 346.65(2)(am)2. Birchfield's expansion is apparent from the majority opinion's definition of "criminal penalty": "A lengthier jail sentence is certainly a criminal penalty."[4] That is not how "criminal penalty" was defined in Birchfield. There, the comparison was between administrative penalties for refusal and statutorily required criminal penalties for refusal. Administrative penalties for withdrawing consent were permissible and criminal penalties were not. Id. at 2186.

¶86 In the case before us, the majority opinion misleads the reader because it does not explain that Dalton did not receive a criminal penalty for refusing to submit to a blood draw. Rather, he received a criminal penalty because he had committed a second OWI. Wis. Stat. §§ 343.305(10)(b)1. and 343.307(2)(f).

¶87 The majority opinion doubles down on its erroneous conclusion of law by asserting "Dalton was criminally punished

---

[4] Majority op., ¶59.

6

for exercising his constitutional right."[5] First, the majority opinion contradicts the United States Supreme Court which has held, Dalton had no constitutional right to withdraw his consent that he gave when he drove his vehicle on Wisconsin highways after drinking to the point of intoxication. Neville, 459 U.S. at 560 n.10 & 565 (explaining that "a person suspected of drunk driving has no constitutional right to refuse to take a blood-alcohol test" and that the person's "right to refuse the blood-alcohol test [] is simply a matter of grace bestowed by the South Dakota legislature."); see also Birchfield, 136 S. Ct at 2186 ("the Fourth Amendment did not require officers to obtain a warrant prior to demanding the [breath] test, and Bernard had no right to refuse it.").

¶88 Second, the cases cited by the majority do not provide support for the contention that Dalton had a constitutional right to refuse a blood test as the majority contends. To the contrary, the cited cases have nothing to do with implied-consent laws. Harman v. Forssenius, 380 U.S. 528 (1965) involved restrictions on the constitutional right to vote through the use of poll taxes. Buckner v. State, 56 Wis. 2d 539, 202 N.W.2d 406 (1972) involved an offhand court comment at sentencing that Buckner contended invaded his right to remain silent. Kubart v. State, 70 Wis. 2d 94, 233 N.W.2d 404 (1975) involved twelve separate counts of burglary, only one of which was tried to a jury. The defendant contended that the eight

---

[5] Majority op., ¶61.

7

year sentence was harsh and an erroneous exercise of discretion based on his going to trial on one of the counts. Once again the majority opinion tries to invoke Birchfield for purely sentencing decisions. Birchfield has nothing to do with a circuit court's sentencing discretion.

¶89 Also of concern is that the majority opinion could be read to conclude that Birchfield prohibits the misdemeanor penalty that Wis. Stat. § 346.65(2)(am)2. requires due to Dalton's revocation for refusing to take a requested test counting as a second OWI. In the future, recidivists may withdraw consent for all tests for intoxication if their refusals cannot lead to criminal penalties due to OWI recidivism that would have been imposed upon proof of intoxication from actual blood, breath or urine tests. See Wis. Stat. §§ 343.305(10); 343.307(1)(f) and 346.65(2)(am)2-7.

¶90 The United States Supreme Court should consider granting review herein to explain the Fourth Amendment parameters of Birchfield when state law penalties for withdrawing consent are civil and evidentiary and criminal penalties occur for recidivism. In addition, because the majority opinion chooses to disregard Neville's explicit statements that a person's refusal to permit a blood draw after being arrested for OWI is a matter of legislative grace not one of constitutional right, proof possible at OWI trials may be compromised by the exercise of this new Fourth Amendment right. These issues need attention and can receive none further in Wisconsin courts.

8

## C. Sentencing

¶91 Sentencing is a discretionary decision of the circuit court. Gallion, 270 Wis. 2d 535, ¶17. A circuit court's exercise of discretion is afforded "a strong presumption of reasonability" because the circuit court is able to view the demeanor of the defendant and assess competing sentencing interests. Id., ¶18.

¶92 The focus of a sentencing court's consideration should be the gravity of the offense, the character and rehabilitative needs of the offender and the need for public protection. State v. Sarabia, 118 Wis. 2d 655, 673, 348 N.W.2d 527 (1984). A sentencing court properly exercises its discretion when it relies on controlling law and sets out reasoning that supports its sentencing. McCleary v. State, 49 Wis. 2d 263, 281, 182 N.W.2d 512 (1971). When a circuit court actually relies on improper factors, it erroneously exercises its discretion. Alexander, 360 Wis. 2d 292, ¶17.

¶93 In Dalton's sentencing, the circuit court was concerned with Dalton's repeated lack of respect for the law. The court noted that this was Dalton's second OWI and his BAC of 0.238 is so far above the legal limit that it evidences a complete disregard of his obligation to refrain from consuming significant alcohol before driving. Dalton was operating after revocation when he incurred this second OWI offense, and he drove recklessly, at close to 100 miles per hour, causing severe injury to his passenger and himself.

9

¶94 Dalton objects to the circuit court's reference to his withdrawal of consent to submit to a blood draw as sufficient reason to remand for resentencing. The majority opinion agrees with Dalton.[6] However, that one comment is insufficient to show that the circuit court erroneously exercised its sentencing discretion.

¶95 The court made a record of its concerns for Dalton's lack of respect for the law, and failing to authorize a blood draw was just one such incident. The court was concerned with Dalton's level of intoxication, 0.238. Wisconsin Stat. § 346.65(2m)(a) guides the effect of BAC level in sentencing. It provides:

> In imposing a sentence under sub. (2) for a violation of s. 346.63(1)(am) or (b) or (5) . . . the court shall review the record and consider the aggravating and mitigating factors in the matter. If the amount of alcohol in a person's blood . . . is known, the court shall consider that amount as a factor in sentencing.

¶96 Dalton's BAC level supports the circuit court's sentence as does his reckless driving and his driving after revocation. All bear on Dalton's character and demonstrate that it will not be easy to get him to turn his conduct around. The majority opinion takes the circuit court's singular statement about Dalton's refusal out of context. Read within the court's full sentencing discussion, it was just one of many factors that showed Dalton's complete disregard of the law, which is indicative of his character. The circuit court did not

---

[6] Majority op., ¶4.

10

erroneously exercise its discretion.  State v. Salas Gayton, 2016 WI 58, ¶¶3, 15, 370 Wis. 2d 264, 882 N.W.2d 459 (concluding that the circuit court's comments on Mr. Gayton's status as an illegal alien did not demonstrate reliance on an improper factor at sentencing).

### III. CONCLUSION

¶97 The circuit court's sentencing of Dalton does not conflict with Birchfield and is well within the circuit court's sentencing discretion.  Because the majority opinion misunderstands the directive of Birchfield and expands the statutory opportunity to withdraw consent pursuant to Wis. Stat. § 343.305(4) into a constitutional right to refuse a blood draw, I respectfully dissent.

¶98 I am authorized to state that Justice MICHAEL J. GABLEMAN joins this dissent.

11

¶99 ANNETTE KINGSLAND ZIEGLER, J. *(dissenting).* The majority opinion seriously errs. Driving on a public highway is not a constitutional right nor is it a right at all. When someone chooses to drive in the public domain, they must comply with state statutes commensurate with that privilege. Our legislature requires, for example, a public highway driver to possess a valid driver's license. See Wis. Stat. § 343.18(1). The consequence for not having one is a civil ticket. See § 343.18(3). Our legislature has also determined, as many states have, that there are consequences for a public highway driver who drives intoxicated. One consequence of doing so is to have impliedly consented to a blood test, provided of course that there is sufficient evidence that they are driving intoxicated. See Wis. Stat. § 343.305(3). They still may refuse this implied consent, but, like driving without a license, that refusal will result in a civil ticket. See § 343.305(9). It might be one thing if the consequence for refusing that test were a criminal charge, as in Birchfield v. North Dakota, 579 U.S. ____, 136 S. Ct. 2160 (2016), but in Wisconsin, as in many states, the consequence under our implied consent law is civil.

¶100 Relying on refusal to consent in determining sentence for an OWI does not change the civil nature of the refusal ticket. Judges can and do consider a variety of factors when imposing sentence——including conduct that is not against the law at all (e.g., lack of remorse)——and the obstructive and prohibited behavior of refusal is but one proper consideration.

1

Thus, the majority errs in concluding that the circuit court erroneously exercised its discretion when it considered Dalton's refusal to consent to the blood draw during sentencing because considering refusal to consent as a factor during sentencing is not the same as criminalizing refusal. Therefore, although the United States Supreme Court proscribed criminalizing refusal in Birchfield, it did not proscribe, and in fact seemingly approved of, a civil penalty for refusal. See Birchfield, 136 S. Ct. at 2185-86. I therefore disagree with the majority in our case today for at least two reasons: first, the court interprets Birchfield's holding too broadly; and second, its analysis erroneously equates "sentencing factor" with a "criminal statute." In sum, the majority opinion today rewrites Birchfield and redrafts state statutes, and, in so doing, unnecessarily creates significant risk to the users of our public highways.

¶101 Accordingly, I respectfully dissent,[1] and I join Chief Justice Roggensack's call for the United States Supreme Court to assist the state courts with respect to this issue.

---

[1] I do not disagree with the majority's analysis in Part III.B of the opinion, which concludes that Dalton's trial counsel was not ineffective for failing to file a motion to suppress the blood evidence because such a motion would have been meritless given the exigent circumstances "[giving] rise to a reasonable belief that a delay in procuring a warrant would risk the destruction of evidence." Majority op., ¶52; id., ¶¶53-54. This issue, however, is not why we took this case.

### I. WISCONSIN CIVIL, NORTH DAKOTA CRIMINAL

¶102 In Wisconsin, refusal to consent to a blood draw subjects a driver to civil, not criminal penalties. See Wis. Stat. § 343.305(9). By contrast, the North Dakota statutes at issue in Birchfield had made it a crime to refuse to consent. See 136 S. Ct. at 2170 (citing N.D. Cent. Code Ann. §§ 39-08-01(2), 39-20-01(3)(a)). And the United States Supreme Court concluded that the North Dakota statutes were unconstitutional for that specific reason. The Court concluded that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Id. at 2186 (emphasis added). Thus, Birchfield stands only for the narrow proposition that implied consent statutes which make it a crime to refuse to consent are unconstitutional, and Wisconsin's implied consent law, which does not make it a crime to refuse to consent and imposes only civil penalties for refusal, is therefore not unconstitutional under Birchfield. The majority errs in conflating these distinctions.

¶103 Furthermore, the Court in Birchfield "referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply," and indicated that "nothing [said] here should be read to cast doubt on them." 136 S. Ct. at 2185. Thus, Wisconsin's implied consent law, which imposes only civil penalties, is not only not unconstitutional under Birchfield, but is also seemingly approved by the Supreme Court. Today, our majority rewrites the Supreme Court opinion to fit its analysis.

3

¶104 In sum, Birchfield narrowly holds only that state statutes which make it a crime to refuse to consent are unconstitutional. That is not what we have here. In Wisconsin, it is not a crime to refuse to consent; rather, Wis. Stat. § 343.305(9) imposes only civil penalties (i.e., license revocation). Thus, Birchfield does not dictate the outcome of this case and the majority opinion today is at odds with, rather than consistent with, the United States Supreme Court. It reads Birchfield too broadly and then misapplies Birchfield to send this case back for resentencing, requiring the circuit court to ignore relevant, pertinent, and objective facts that can and should reasonably be considered by the circuit court when imposing sentence on an individual who had been convicted for drunk driving.

## II. SENTENCING FACTOR, NOT A CRIME

¶105 The majority erroneously equates North Dakota's unconstitutional criminal statute with the factors a judge sentencing a drunk driver can consider——as judges have done for decades——namely, that the defendant refused to consent. In so doing, the court rewrites Birchfield and redrafts state statutes. The court here concludes:

> In sum, Birchfield dictates that criminal penalties may not be imposed for the refusal to submit to a blood test. 136 S. Ct. at 2185. A lengthier jail sentence is certainly a criminal penalty. See Doering v. WEA Ins. Grp., 193 Wis. 2d 118, 141, 532 N.W.2d 432 (1995) (referring to imprisonment as a criminal penalty); State v. Peterson, 104 Wis. 2d 616, 621, 312 N.W.2d 784 (1981) (same).

Majority op., ¶59. In so doing, the court commits error.

4

¶106 First, as noted above, see supra ¶¶102-104, Birchfield did not broadly hold that "criminal penalties may not be imposed for the refusal to submit to a blood test," majority op., ¶59; rather, Birchfield held more narrowly that a state statute which made it a crime to refuse to consent to a blood draw is unconstitutional.

¶107 Second, even if Birchfield stood for that broad proposition, reliance on refusal as a factor in sentencing still does not "criminalize" refusal in Wisconsin; that is, it does not transform Wisconsin's civil refusal statute into a crime. Circuit courts regularly rely on the behavior of defendants when imposing sentence (e.g., criminal and civil record, other uncharged crimes, lack of remorse, and violating probation/parole), and that behavior is not transformed into a crime, nor is it considered a criminal penalty, by virtue of its relevance to sentencing.

¶108 In sum, the majority erroneously requires circuit courts to put blinders on, to not consider relevant, pertinent, and objective factors related to the particular crime before the court, and instead insists that it is error for a court to impose sentence based upon the facts of the case before it.

## III. CONCLUSION

¶109 The majority opinion seriously errs. Driving on a public highway is not a constitutional right nor is it a right at all. When someone chooses to drive in the public domain, they must comply with state statutes commensurate with that privilege. Our legislature requires, for example, a public

highway driver to possess a valid driver's license. See Wis. Stat. § 343.18(1). The consequence for not having one is a civil ticket. See § 343.18(3). Our legislature has also determined, as many states have, that there are consequences for a public highway driver who drives intoxicated. One consequence of doing so is to have impliedly consented to a blood test, provided of course that there is sufficient evidence that they are driving intoxicated. See Wis. Stat. § 343.305(3). They still may refuse this implied consent, but, like driving without a license, that refusal will result in a civil ticket. See § 343.305(9). It might be one thing if the consequence for refusing that test were a criminal charge, as in Birchfield v. North Dakota, 579 U.S. ____, 136 S. Ct. 2160 (2016), but in Wisconsin, as in many states, the consequence under our implied consent law is civil.

¶110 Relying on refusal to consent in determining sentence for an OWI does not change the civil nature of the refusal ticket. Judges can and do consider a variety of factors when imposing sentence——including conduct that is not against the law at all (e.g., lack of remorse)——and the obstructive and prohibited behavior of refusal is but one proper consideration. Thus, the majority errs in concluding that the circuit court erroneously exercised its discretion when it considered Dalton's refusal to consent to the blood draw during sentencing. Considering refusal to consent as a factor during sentencing is not the same as criminalizing refusal. Therefore, although the United States Supreme Court proscribed criminalizing refusal in

6

<u>Birchfield</u>, it did not proscribe, and in fact seemingly approved of, a civil penalty for refusal. <u>See</u> <u>Birchfield</u>, 136 S. Ct. at 2185-86. I therefore disagree with the majority in our case today for at least two reasons: first, the court interprets <u>Birchfield</u>'s holding too broadly; and second, its analysis erroneously equates "sentencing factor" with a "criminal statute." In sum, the majority opinion today rewrites <u>Birchfield</u> and redrafts state statutes, and, in so doing, unnecessarily creates significant risk to the users of our public highways.

¶111 Accordingly, I respectfully dissent,[2] and I join Chief Justice Roggensack's call for the United States Supreme Court to assist the state courts with respect to this issue.

¶112 I am authorized to state that Justice MICHAEL J. GABLEMAN joins this dissent.

---

[2] I do not disagree with the majority's analysis in Part III.B of the opinion, which concludes that Dalton's trial counsel was not ineffective for failing to file a motion to suppress the blood evidence because such a motion would have been meritless given the exigent circumstances "[giving] rise to a reasonable belief that a delay in procuring a warrant would risk the destruction of evidence." Majority op., ¶52; <u>id.</u>, ¶¶53-54. This issue, however, is not why we took this case.