# COURT OF APPEALS
## DECISION
## DATED AND FILED

## November 13, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2023AP1991-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2019CF539

**IN COURT OF APPEALS
DISTRICT II**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

SHANE R. SURLES,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Walworth County:  PHILLIP A. KOSS, Judge.  *Affirmed.*

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Shane R. Surles appeals a judgment of conviction, entered following a jury trial, for attempted third-degree sexual assault and burglary.[1] He also appeals from an order denying postconviction relief. On appeal, he argues he received ineffective assistance of counsel in relation to the presentation of his defense at trial. We affirm.

¶2 Relevant to this appeal, the State charged Surles with burglary and attempted third-degree sexual assault. At trial, Noelle[2] testified that in October 2019 she lived in an apartment with her college roommate, Erica. At 3:00 a.m. on October 14, Noelle woke up to use the bathroom, thought she heard something, and when she returned to her bedroom, Surles was in her room wearing a wig and smiling at her. When Noelle saw Surles, she screamed for her boyfriend, Tom, who was sleeping in her room. Surles then stopped smiling and looked "very scared." Surles ran and Tom chased after him. The commotion in the hallway woke up Erica, who was sleeping in her room. Erica recognized Surles as the previous tenant of their apartment.

¶3 An officer testified that Surles told police he entered the women's apartment without permission "to see something." When asked further questions, Surles responded he went there for "whatever could possibly transpire." The officer asked Surles if he hoped to have sex with someone in the apartment; Surles responded "hopefully something like that." When asked what Surles thought would have happened if Noelle's boyfriend was not in the apartment, Surles said he had a

---

[1] The jury also convicted Surles of criminal trespass to dwelling, disorderly conduct, and obstructing an officer. Surles advises this court that he does not appeal those convictions.

[2] Pseudonyms are used to identify all the victims in this case. *See* WIS. STAT. RULE 809.86(4).

fantasy that "something" would happen but that he was not going to hurt or rape her.

¶4      The State also presented other-acts testimony from Jane and Elizabeth regarding allegations of sexual assault against Surles in 1998 and 1999. Both women testified that Surles entered bedrooms where they were sleeping and performed oral sex on them without their consent.

¶5      Surles did not testify. In closing, as relevant, the State argued that the jury should use the evidence that Surles previously assaulted two women to determine his intent in entering Noelle and Erica's apartment. The State argued that, "[b]ased on the evidence presented, [it] is simply not a reasonable conclusion" that Surles "had something else on his mind other than the intent to sexually assault [Noelle] inside of that bedroom."

¶6      Surles' counsel argued the State did not meet its burden of proof. Counsel asserted, "[W]hat we have here is evidence … that Shane Surles is a creeper. He's kind of like a peeping Tom that goes into a house to creep. So why couldn't his intent be to go in and be a voyeur?" Counsel argued Surles "damaged nothing. He touched nothing. There was no sexual assault. He didn't say anything or really do anything to indicate that night that he was pursuing a third[-]degree sexual assault except for [the] fact [of] him being there[.]" Counsel continued:

> [P]erhaps he went in there to watch [Noelle] sleep. Perhaps he went in there to expose himself, that he was a flasher. Perhaps he went in there to pleasure himself or to see something and then go home and pleasure himself. Why couldn't those be his purposes in being there rather than unequivocally the only thing he could have been doing is planning a third degree sexual assault?
>
> … I don't think that you should find that beyond a reasonable doubt. I don't think that you should find that there isn't another explanation other than third degree sexual

> assault. He didn't say anything other than being there or do anything that -- that would unequivocally demonstrate to you what he intended to do while he was there.

¶7 The jury convicted Surles as charged on all counts. Surles filed a postconviction motion seeking a new trial on the grounds that his attorney was ineffective for failing to call an expert to testify about his mental state, including a voyeuristic disorder diagnosis. Surles provided the circuit court with a copy of a report prepared after trial where the doctor diagnosed Surles, in part, with a voyeuristic disorder. Surles also argued that his attorney was ineffective for failing to fully explain to Surles his right to testify and the impact that his testimony would have at trial. The court held a *Machner*[3] hearing where trial counsel and Surles testified. The court ultimately determined Surles failed to prove counsel was ineffective.

¶8 On appeal, Surles renews his argument regarding counsel's effectiveness as to the attempted third-degree sexual assault and burglary convictions.[4] To establish a claim of ineffective assistance, a defendant must prove both: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both elements of the ineffective assistance test if the defendant fails to make a sufficient showing on one of them. *State v. Dalton*, 2018 WI 85, ¶32, 383 Wis. 2d 147, 914 N.W.2d 120.

¶9 "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness

---

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

[4] The charges are related because attempted third-degree sexual assault is a felony and the burglary was charged as intentionally entering a dwelling without consent *with intent to commit a felony* while another person was lawfully present in the dwelling.

considering all the circumstances." *Id.*, ¶34. "In evaluating counsel's performance, this court is highly deferential to counsel's strategic decisions." *Id.*, ¶35. We must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "Counsel's performance need not be perfect, or even very good, to be constitutionally adequate." *Dalton*, 383 Wis. 2d 147, ¶35.

¶10 Surles first argues counsel was deficient for failing to retain an expert to offer expert testimony at trial of Surles' mental state, including a voyeuristic disorder diagnosis. He argues trial counsel should have investigated and determined whether Surles' behavior could have been explained by a psychological disorder. Surles believes that had counsel done so, counsel would have retained an expert that would have diagnosed Surles with voyeuristic disorder, the expert's diagnosis would have made it more probable that Surles entered the women's apartment only to be a voyeur, and the jury would have had affirmative evidence that Surles lacked intent to sexually assault Noelle. Surles believes counsel did not investigate Surles' behavior based on counsel's misunderstanding of the law—specifically, counsel went into trial with a strategy of proposing a lesser included offense of attempted fourth-degree sexual assault (a misdemeanor) to avoid the predicate felony for the burglary count.[5] Surles also faults trial counsel for not knowing how much such an expert would have cost.

¶11 We conclude Surles failed to establish counsel was deficient for failing to retain an expert and to offer expert testimony at trial. Defense counsel is

---

[5] "'[A]ttempted fourth-degree sexual assault' is an offense unrecognized in Wisconsin jurisprudence." *State v. Cvorovic*, 158 Wis. 2d 630, 635, 462 N.W.2d 897 (Ct. App. 1990).

permitted to "make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Surles' trial counsel testified in preparing for trial, he determined he did not need to hire a psychological expert to testify. Counsel's strategy was to establish the State failed to meet its burden of proving intent. Counsel explained he asked for the lesser-included jury instruction at "the last moment" and the fact the instruction was not an option "didn't change [his] strategy a bit." Counsel emphasized the State did not have direct evidence that Surles intended to sexually assault Noelle and all of Surles' "overt acts were consistent with a voyeur." Specifically, Surles did not touch anyone; Surles never asked for any sexual contact; Surles did not grab his own penis or make any other sexual gestures. We conclude trial counsel's trial strategy was reasonable and counsel reasonably determined he did not need an expert. *See Dalton*, 383 Wis. 2d 147, ¶35 ("[T]his court is highly deferential to counsel's strategic decisions.").

¶12     Moreover, even if Surles' postconviction expert properly diagnosed him with voyeuristic disorder, that diagnosis does not mean that Surles lacked intent to sexually assault Noelle. As the circuit court observed, "[The] testimony would not have been that being a voyeur therefore, excludes the Defendant's ability to also be assaultive. [The doctor is] not gonna say that. That would be impossible to say. As a matter of fact, he talks about the Defendant's hypersexuality." Thus, Surles could both have the disorder and sexually assault women—the two are not mutually exclusive. The court also noted that Surles' postconviction expert's "testimony would not have been based on independent data. It was all primarily self-reporting by the Defendant." This further establishes that counsel was not deficient for failing to retain and offer expert testimony that Surles had a voyeuristic disorder diagnosis.

¶13     Surles next argues trial counsel was deficient for "fail[ing] to advise Surles that his own testimony was necessary to establish that he did not intend to

commit a felony when he entered the apartment." Surles argues that "[h]ad counsel informed Surles his testimony was necessary to his defense on the intent element, Surles would have testified … in support of his defense."

¶14 We conclude Surles failed to establish trial counsel was deficient for failing to advise Surles "that his own testimony was necessary to show the jury his intent." As a threshold matter, we emphasize there was no requirement that Surles testify at trial; the State at all times carried the burden of proving Surles' intent. Even without Surles' testimony, trial counsel was able to argue that the State failed to offer any direct evidence that Surles intended to sexually assault Noelle and therefore failed to meet its burden of proof.

¶15 Regardless, Surles' argument relating to counsel's advice overlooks trial counsel's testimony from the *Machner* hearing. Trial counsel testified he "discuss[ed] with Mr. Surles that … his testimony could provide evidence of an alternate intent." Trial counsel testified that "[t]he best evidence would have been for Mr. Surles to testify as to what his intent was." Counsel spoke to Surles about testifying "at least four times, and on the last day of trial." Counsel described Surles' ultimate decision not to testify as "not an easy decision." Counsel explained:

> [I]t would have been important for him to state to the jury, give him a chance to convince the jury that he didn't have the requisite intent.
>
> And as we approached that, I told him all along it was his decision, and I told him from day one that it would be important to do that. It would be important to convince the jury that he didn't have the intent to do the sexual assault, that he was a voyeur or whatever or he just didn't know why he was there. And … when he decided not to testify, I was rather disappointed.

¶16    Counsel also affirmed that, during trial, in his last discussion with Surles related to Surles' right to testify, they discussed the "need for evidence regarding his intent."

¶17    Although Surles disputed trial counsel's account of their discussions, the circuit court determined Surles was "not credible" and the court did not believe Surles' version of events.  Credibility determinations and the weight given to the evidence is strictly within the province of the factfinder.  *See* ***State v. Poellinger***, 153 Wis. 2d 493, 506, 451 N.W.2d 752 (1990) ("It is the function of the trier of fact, and not of an appellate court, to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Given the record, we conclude trial counsel was not deficient for failing to advise Surles that "his own testimony was necessary to show the jury his intent."  Surles failed to establish trial counsel was ineffective.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.