COURT OF APPEALS
DECISION
DATED AND FILED

April 9, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP191-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF891

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

GEORGE K. PEARSON-ROBB,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Racine County: TIMOTHY D. BOYLE, Judge. *Affirmed*.

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. George K. Pearson-Robb appeals from a judgment of conviction, entered following a jury trial, convicting him of armed robbery with threat of force as party to a crime, three counts of kidnapping, and one count of robbery of a financial institution, as well as an order denying his postconviction motion. On appeal, Pearson-Robb argues that the evidence was insufficient to convict him of the armed robbery charge and to establish venue for most of the charges, and that counsel was ineffective for failing to object to venue and for failing to object to the State's closing argument. We reject Pearson-Robb's arguments and affirm.

## BACKGROUND

¶2 The State charged Pearson-Robb and two co-actors, Donterious Robb and William Howell, with armed robbery with threat of force as party to a crime, three counts of kidnapping, and robbery of a financial institution. At Pearson-Robb's trial,[1] the State established that the trio staked out "Katherine," who was a Wells Fargo bank branch manager in Racine County. On June 28, 2019, the trio waited for Katherine to leave work. They then followed Katherine's red Impala in a maroon Acura through Racine County to Kenosha County where Katherine lived. On the way, Katherine stopped to pick up her two children (ages five and two) from a babysitter's house. When Katherine arrived at her house, Robb and Howell forced Katherine at gunpoint into the backseat of the Impala. They covered Katherine's face with clothing and drove her and her children from

_____

[1] Robb and Howell reached plea agreements with the State, and they pled to various charges.

2

Kenosha to a house in Milwaukee County. Pearson-Robb's mother lived at the house, and Pearson-Robb "stayed" there.

¶3 In Milwaukee, Robb and Howell forced Katherine and her children into the basement at gunpoint and held them captive. The Acura broke down on the way back to Milwaukee, and a state trooper assisted the driver, who was identified as Pearson-Robb. The trooper drove Pearson-Robb to a gas station, where surveillance captured him wearing a Victoria's Secret black sweatshirt with the letters PINK on it along with low-riding pants that revealed a distinctive-patterned underwear. Howell testified, and surveillance confirmed, that he picked Pearson-Robb up from the gas station in Katherine's Impala.

¶4 At 6:00 a.m. the next day, the trio forced Katherine and her children back into the Impala and took them at gunpoint to the Wells Fargo bank in Racine County where Katherine worked. Once inside the bank, the men forced Katherine to open the vault, and they stole approximately $48,000. Surveillance video depicted Katherine and her children inside the bank with the men, who were masked. One of the masked men was wearing a Victoria's Secret black sweatshirt with the letters PINK on it along with low-riding pants that revealed the same distinctive-patterned underwear that Pearson-Robb had been wearing hours earlier. The male wearing the PINK sweatshirt triggered an alarm, and the three men ran out of the bank. The men left in Katherine's Impala. The Impala was later discovered in Milwaukee County destroyed by fire.

¶5 At trial, Pearson-Robb's theory of the case was that he was not the third member of the trio. Pearson-Robb did not testify at trial, but Howell testified that someone else, who was now deceased, was actually the third member of their

3

plot.[2]  Howell conceded that he had originally told police that Pearson-Robb was the third member of the trio and drove the Acura.

¶6      The jury convicted Pearson-Robb as charged.  Pearson-Robb filed a postconviction motion alleging the evidence was insufficient to convict him and counsel was ineffective.  The circuit court denied the motion.  Pearson-Robb appeals.  Additional facts will be included below.

## I.      Sufficiency of the evidence

¶7      On appeal, Pearson-Robb makes two sufficiency of the evidence arguments.  He first argues the evidence was insufficient to support his conviction for armed robbery with threat of force as party to a crime because the State failed to prove one of the elements of that crime.  He then asserts the evidence was insufficient on the same armed robbery count along with the three kidnapping convictions "because the information and verdicts alleged [the offenses] occurred in Kenosha County which was an improper venue for an offense tried in Racine County."  (Capitalization omitted.)  We address each argument in turn.

### A.  Armed robbery

¶8      Pearson-Robb contends the evidence was insufficient to establish one of the elements of armed robbery with threat of force as party to a crime.  This count related to the trio's robbery of Katherine's Impala.  Pearson-Robb argues the State failed to prove that he "inten[ded] to permanently deprive" Katherine of her

---

[2] In the circuit court's written decision denying Pearson-Robb's postconviction motion, the court noted, among other things, that it sentenced Howell after Pearson-Robb's trial and during his sentencing Howell "actually apologized for his concocted story/testimony" from Pearson-Robb's trial.

vehicle. *See* WIS. STAT. § 943.32(1)(b) & (2) (2023-24)[3]; WIS JI—CRIMINAL 1480 (2016). He argues the "evidence only showed that Pearson-Robb was involved in the taking and use of the" property and "there was no evidence presented that he shared the intent of his co-defendants to destroy the car since he left the group well before" they destroyed it. He also asserts "[t]here was no evidence of a plan to keep the vehicle or destroy it" and he "was not involved in [any] abandonment or disposal of the vehicle after the robbery and kidnapping was over."

¶9     Whether evidence was sufficient to sustain a jury's verdict is a question of law reviewed independently. ***State v. Smith***, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. When reviewing the sufficiency of the evidence, this Court considers the evidence "in the light most favorable to the State and reverse[s] the conviction only where the evidence 'is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.'" ***Id.*** (citation omitted).

¶10     We conclude the evidence sufficiently supports the jury's determination that, as party to a crime, Pearson-Robb intended to permanently deprive Katherine of possession of her Impala. *See* WIS. STAT. § 939.05(2) (party-to-a-crime liability attaches when a person is "concerned in the commission of [a] crime," meaning the person directly committed the crime, intentionally aided and abetted the commission of the crime, or was party to a conspiracy with another to commit it). Here, once Katherine's Impala was taken from her at gunpoint, Katherine had no ability to use the car, and Howell drove the car for his

---

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

own use. Further, after the bank robbery, Katherine testified that the three robbers ran out of the bank and drove away in her Impala, which she did not see again until it was recovered. Howell similarly testified that he and his co-actors drove away in the Impala, adding that one of his accomplices "torched" it.

¶11 As the circuit court reasoned when denying Pearson-Robb's postconviction motion, because Pearson-Robb and his accomplices "left in the victim's Impala after the bank" robbery, and the Impala was "eventually found destroyed by fire," it was "easy to conclude that [Pearson-Robb's] intent was to permanently deprive [Katherine] of possession." We agree. None of this evidence is incredible as a matter of law. *See Smith*, 342 Wis. 2d 710, ¶24.

### B. Venue

¶12 Pearson-Robb next argues "the evidence was insufficient" on the armed robbery and three kidnapping convictions "because the information and verdicts alleged [the offenses] occurred in Kenosha County which was an improper venue for an offense tried in Racine County." (Capitalization omitted.) He asserts "[t]he problem was that the State's pleadings (the complaint and the information) and the verdict submitted to the jury never alleged there was any basis for venue in Racine County where this case was filed." He seemingly argues that trial for the robbery and the three kidnapping charges should have occurred in Kenosha County because he asserts that "A trial that takes place in a location not authorized by law is void."

¶13 We reject Pearson-Robb's arguments. As a threshold matter, Pearson-Robb's arguments do not appear to challenge the evidence introduced at trial that was used to establish venue in Racine County. He concedes to this court that "there were facts at trial that might have enabled the State to prove venue in

Racine County." Instead, although presented as a sufficiency of the evidence argument, it appears Pearson-Robb's assertion is that the second amended information alleged these counts occurred in Kenosha County and that the jury was not instructed to find that any of those counts occurred in Racine County. However, as the jury was instructed, the information is not evidence and indeed is "nothing more than a written, formal accusation" against the defendant. As the State argues, Pearson-Robb cites no authority for the proposition that the test for proper venue assesses the language of the charges or jury instructions. *See State v. Corey J.G.*, 215 Wis. 2d 395, 408, 572 N.W.2d 845 (1998) ("[V]enue is a matter of procedure and not an element of a crime."). The venue test is whether the evidence *at trial* supported the finding that venue was proper in Racine County. *See id.* at 407-08.

¶14 In any event, even if Pearson-Robb's argument is that the evidence presented at trial was insufficient to establish venue in Racine County, we conclude venue was sufficiently established in Racine County. In Wisconsin, "venue is not an element of a crime, it nonetheless must be proved beyond a reasonable doubt" at trial. *State v. Schultz*, 2010 WI App 124, ¶12, 329 Wis. 2d 424, 791 N.W.2d 190. In general, "[c]riminal actions [must] be tried in the county where the crime was committed." WIS. STAT. § 971.19(1). Where a crime has two or more elements, venue may be proper in any county where any element of the crime occurred. *See State v. Swinson*, 2003 WI App 45, ¶21, 261 Wis. 2d 633, 660 N.W.2d 12. Sufficiency of the evidence is the test for determining whether the State proved venue in a criminal case. *See Corey J.G.*, 215 Wis. 2d at 407-08.

¶15 To find Pearson-Robb guilty of armed robbery with threat of force as a party to a crime, the jury was instructed that they had to find the State proved that Pearson-Robb either "aid[ed] and abett[ed] the person who directly committed

7

[the crime] or [was] a member of a conspiracy to commit the crime." WIS JI—CRIMINAL 401 (2005); WIS. STAT. § 939.05(2). Armed robbery has the following elements: (1) the victim was the owner of the property; (2) the defendant took and carried away the property from the victim; (3) the defendant intended to permanently deprive the owner of possession of the property; (4) the defendant acted forcibly; and (5) at the time of the taking and carrying away, the defendant used or threatened to use an article used or fashioned in a manner to lead the person reasonably to believe it was capable of producing death or great bodily harm. WIS. STAT. § 943.32(1)(b) & (2); WIS JI—CRIMINAL 1480 (2016).

¶16 Here, at a minimum, the evidence presented at trial permitted the jury to find that, while in Racine County, Pearson-Robb demonstrated an intent to assist in permanently depriving Katherine of the Impala. Katherine and Howell each testified that at the end of the bank robbery, all the robbers ran out of the Racine bank and drove away in Katherine's vehicle. The evidence sufficiently establishes venue in Racine County for Pearson-Robb's armed-robbery-with-threat-of-force-as-party-to-a-crime conviction.

¶17 To find Pearson-Robb guilty of kidnapping, the State had to prove: (1) a defendant transported another person from one place to another; (2) the defendant transported that person without that person's consent; (3) the defendant forcibly transported that person; and (4) the defendant intended that the person be secretly confined or imprisoned. WIS. STAT. § 940.31(1)(a); WIS JI—CRIMINAL 1280 (2016).

¶18 Here, the evidence at trial established Pearson-Robb was driving the Acura that initially followed Katherine's Impala from her bank in Racine County to her home in Kenosha County. This allowed the jury to reasonably find that

Pearson-Robb demonstrated his intent to kidnap within Racine County. Further, the kidnappings continued until the end of the robbery the next day while at the bank in Racine County. Katherine testified that she and her children were transported against their will, at gunpoint, back to the bank in Racine, and that she was forced, at gunpoint, to unarm the branch and open the vault once inside the bank. The evidence sufficiently established that at least two of the kidnapping elements—forcible transport and transport without consent—occurred within Racine County.

## II.    Ineffective assistance of counsel

¶19    Pearson-Robb next argues he received ineffective assistance of counsel. To establish a claim of ineffective assistance, a defendant must prove both: (1) deficient performance by counsel; and (2) prejudice resulting from that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We need not address both elements of the ineffective assistance test if the defendant fails to make a sufficient showing on one of them. *State v. Dalton*, 2018 WI 85, ¶32, 383 Wis. 2d 147, 914 N.W.2d 120.

¶20    "To demonstrate deficient performance, a defendant must show that counsel's representation fell below an objective standard of reasonableness considering all the circumstances." *Id.*, ¶34. "In evaluating counsel's performance, this court is highly deferential to counsel's strategic decisions." *Id.*, ¶35. We must make "every effort ... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

¶21    "To prove prejudice, a defendant must establish that 'particular errors of counsel were unreasonable' and 'that they *actually* had an adverse effect on the defense.'" *State v. Sholar*, 2018 WI 53, ¶33, 381 Wis. 2d 560, 912 N.W.2d 89.  We evaluate whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶22    On appeal, Pearson-Robb first argues counsel was ineffective for failing to challenge venue in Racine County.  The State responds that venue challenges the sufficiency of the evidence, and Pearson-Robb could appeal that issue as a matter of right, regardless of whether it was raised before or during trial. *See State v. Hayes*, 2004 WI 80, ¶54, 273 Wis. 2d 1, 681 N.W.2d 203.  We agree with the State.  Because there was no need to preserve a venue objection based on sufficiency of the evidence, Pearson-Robb cannot prove prejudice and therefore counsel was not ineffective. *See id.*; *see also Dalton*, 383 Wis. 2d 147, ¶32.

¶23    Pearson-Robb next argues counsel was ineffective for failing to object to statements made by the State during its closing rebuttal argument.  We will begin our analysis of this issue by putting the State's rebuttal argument into context.  During Pearson-Robb's closing argument, his trial counsel argued the State had not met its burden of establishing that Pearson-Robb was the third member of the trio.  Trial counsel observed that the State had made a big deal of the Victoria's Secret black sweatshirt with the PINK lettering and the distinctive-patterned underwear that the State argued Pearson-Robb had been wearing during the crimes.  Pearson-Robb's counsel then argued:

This PINK sweatshirt, that black hoodie with the PINK lettering, where is it? If we're going to make such a big deal about the underwear and a sweatshirt, where is it and where has the DNA and testing been done? Has there been any DNA testing done? We don't show that.

¶24 During the State's rebuttal closing argument, the prosecutor responded, in part, that people may trade clothes but they do not trade or share underwear. The prosecutor continued:

[Y]ou certainly don't wear [underwear] until 11:00 at night and then hand them off to someone else at 6:00 the next morning. It's just not a reasonable assumption for people in regular society.

Only George Pearson-Robb knows where the PINK sweatshirt is. Only George Pearson-Robb knows where those underwear are. How else are we supposed to know in the infinite area of the world where he would put his clothes that night, but I've got one idea that would make a lot of sense. They're in the burned out Impala with the rest of the evidence.

¶25 On appeal, Pearson-Robb argues the prosecutor's rebuttal argument that only Pearson-Robb knew the location of the sweatshirt and underwear was an improper comment on his Fifth Amendment right to remain silent. He argues counsel was ineffective for failing to object to the prosecutor's argument.

¶26 The Fifth Amendment bars "either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615 (1965). To establish a *Griffin* violation, the defendant must prove three elements. *State v. Hoyle*, 2023 WI 24, ¶29, 406 Wis. 2d 373, 987 N.W.2d 732. "First, the prosecutor's language must have been 'manifestly intended to be' or was 'of such character that the jury would naturally and necessarily take it to be' a 'comment on the failure of the [defendant] to testify.'" *Id.* (citation omitted). "Second, the prosecutor's language must also

11

have been 'manifestly intended to be' or was 'of such character that the jury would naturally and necessarily take it to be' [a comment] 'that such silence is evidence of guilt.'" ***Id.*** (citations omitted). "Finally, the prosecutor's comments must not have been 'a fair response to a claim made by defendant or his counsel.'" ***Id.*** (citation omitted).

¶27 We conclude the prosecutor's rebuttal argument was not a ***Griffin*** violation. At a minimum, the comments were a direct response to Pearson-Robb's closing argument, and thus, Pearson-Robb has not established the third element of a ***Griffin*** violation. *See **Hoyle***, 406 Wis. 2d 373, ¶29. Because the prosecutor's rebuttal argument was not a ***Griffin*** violation, trial counsel's failure to object on that basis was not deficient performance. *See **Dalton***, 383 Wis. 2d 147, ¶53. Pearson-Robb's trial counsel was not ineffective. *See **id.***, ¶54.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* Wis. Stat. Rule 809.23(1)(b)5.