**COURT OF APPEALS
DECISION
DATED AND FILED**

**January 6, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1012-CR**

Cir. Ct. No. **2023CT10**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

NICHOLAS L. SPARBY-DUNCAN,

    DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Dunn County: JAMES M. PETERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

¶1 GILL, J. Nicholas L. Sparby-Duncan appeals from a nonfinal order denying his motion to dismiss criminal charges of failing to install an ignition interlock device (IID) and operating a motor vehicle with a prohibited alcohol

concentration (PAC), as a second offense.[1] The issue on appeal is whether the statutes criminalizing the failure to install an IID and driving with a PAC are unconstitutional as applied to Sparby-Duncan because Sparby-Duncan would not have been subject to an IID order or a 0.02 PAC absent his prior refusal to submit to a warrantless blood draw.

¶2 Sparby-Duncan argues that "the use of the prior refusal to impose criminal penalties" on him is unconstitutional under the United States Supreme Court's decision in *Birchfield v. North Dakota*, 579 U.S. 438 (2016), and the Wisconsin Supreme Court's decisions in *State v. Dalton*, 2018 WI 85, 383 Wis. 2d 147, 914 N.W.2d 120, and *State v. Forrett*, 2022 WI 37, 401 Wis. 2d 678, 974 N.W.2d 422. Conversely, the State argues that the IID and PAC statutes are constitutional as applied to Sparby-Duncan because "the connection between Sparby-Duncan's prior refusal and his current charges is indirect at best," and "Sparby-Duncan's IID order was a civil penalty or consequence for refusing a blood draw, which is permissible under *Birchfield*."

¶3 We agree with the State that Sparby-Duncan has failed to show that the IID and PAC statutes are unconstitutional as applied to him. It is undisputed that, pursuant to *Birchfield*, a state may impose civil penalties on a driver based on his or her refusal to submit to a warrantless blood draw. *See Birchfield*, 579 U.S. at 476-77; *Forrett*, 401 Wis. 2d 678, ¶8 n.5. Here, as a result of Sparby-Duncan's

---

[1] We granted Sparby-Duncan's petition for leave to appeal the circuit court's nonfinal order on July 24, 2024. *See* WIS. STAT. RULE 809.50(3) (2023-24). This appeal was then converted from a one-judge appeal to a three-judge appeal under WIS. STAT. RULE 809.41(3) (2023-24).

All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

refusal, the State imposed a civil penalty on him—namely, an IID order. As a result of the IID order, by statute, Sparby-Duncan is subject to a PAC of 0.02, rather than 0.08. The IID and PAC charges in the instant case threaten to impose criminal penalties on Sparby-Duncan for violating the IID order and for driving with a blood alcohol concentration above 0.02, not for refusing to submit to a warrantless blood draw. Stated differently, the refusal and the IID and PAC charges are sufficiently attenuated from one another such that the IID and PAC charges are not unconstitutional under *Birchfield*, *Dalton*, and *Forrett*. We therefore affirm the circuit court's order denying Sparby-Duncan's motion to dismiss the IID and PAC charges.

## BACKGROUND

¶4     In January 2023, the State filed a criminal complaint charging Sparby-Duncan with three counts: (1) failure to install an IID; (2) operating a motor vehicle after revocation; and (3) operating a motor vehicle while intoxicated (OWI), as a second offense. The State subsequently filed an amended complaint adding a fourth count—operating with a PAC, as a second offense. The amended complaint alleged that Sparby-Duncan had operated a motor vehicle with a blood alcohol concentration of 0.078. The amended complaint further alleged that Sparby-Duncan was subject to a 0.02 PAC because he was "subject to an order under [WIS. STAT. §] 343.301"—i.e., an IID order. *See* WIS. STAT. § 340.01(46m)(c) (providing that "[p]rohibited alcohol concentration" means "an alcohol concentration of more than 0.02" "[i]f the person is subject to an order under [§] 343.301").

¶5     Sparby-Duncan moved to dismiss Counts 1 and 4—the IID and PAC charges—arguing that the statutes criminalizing the failure to install an IID and

3

operating a motor vehicle with a PAC are unconstitutional as applied to him under *Birchfield*, *Dalton*, and *Forrett*. As background for his motion, Sparby-Duncan alleged that he "was convicted in Eau Claire County of refusing to submit to a warrantless blood draw" in 2008, which "was his first OWI-related conviction" under WIS. STAT. § 343.307(1). He further alleged that on December 17, 2013, he pled guilty to operating a motor vehicle with a detectable amount of a restricted controlled substance (RCS) in his blood, which was his second OWI-related conviction under § 343.307(1). According to the motion to dismiss, as a result of the 2013 RCS conviction, Sparby-Duncan's driver's license was revoked, and he was ordered to install an IID for a period of 12 months, pursuant to WIS. STAT. § 343.301(1g) (2013-14).

¶6    It is undisputed that, following the Wisconsin Supreme Court's decision in *Forrett*, the State could no longer count Sparby-Duncan's 2008 refusal as a prior OWI-related offense under WIS. STAT. § 343.307(1). *See Forrett*, 401 Wis. 2d 678, ¶1 (holding that "Wisconsin's OWI graduated-penalty scheme is unconstitutional to the extent it counts prior revocations for refusing to submit to a warrantless blood draw as offenses for the purpose of increasing the criminal penalty" for a subsequent OWI offense). As a result, the State charged the OWI and PAC counts in this case as second offenses, rather than third offenses.

¶7    However, in his motion to dismiss, Sparby-Duncan argued that he was entitled to additional relief under *Forrett*, along with *Birchfield* and *Dalton*. Specifically, he argued that those cases should be interpreted to prevent the State from imposing "criminal consequences that are inextricably intertwined with past refusals of the type the parties to this case agree are not countable under WIS. STAT. § 343.307(1), including those resulting from orders to install IIDs." Sparby-Duncan further argued that the IID and PAC charges in this case are

4

inextricably intertwined with his 2008 refusal because, absent that refusal, the sentencing judge in the 2013 case could not have imposed an IID order, and absent the IID order, he would not have been subject to a 0.02 PAC.

¶8 In response to Sparby-Duncan's motion to dismiss, the State argued that the IID and PAC charges do not seek to impose criminal penalties on Sparby-Duncan based on his 2008 refusal. Instead, the State asserted that the IID and PAC charges seek to impose criminal penalties on Sparby-Duncan based on his failure to comply with the IID order, which was a civil penalty for the 2008 refusal, and based on his act of driving with a PAC. The State emphasized that, under *Birchfield*, the government may impose civil penalties as a result of an individual's refusal to submit to a warrantless blood draw.

¶9 Following a nonevidentiary hearing, the circuit court denied Sparby-Duncan's motion to dismiss the IID and PAC charges. The court reasoned that the Wisconsin Supreme Court's holding in *Forrett* "was that you couldn't enhance a later OWI … based upon an offense that shouldn't be counted because of a refusal for a blood draw." The court further reasoned that the IID order imposed against Sparby-Duncan in 2013 was not an "ongoing punishment" for his 2008 refusal and that any potential criminal punishment in the instant case would instead "come from failing to install" the IID. The court stated that the "[s]ame reasoning" applied to Sparby-Duncan's motion to dismiss the PAC charge.

¶10 Sparby-Duncan now appeals from the circuit court's order denying his motion to dismiss.[2]

---

[2] We held oral argument in this case on November 18, 2025.

**DISCUSSION**

¶11    Under either a facial or an as-applied constitutional challenge, "the constitutionality of a statute is a question of law we review de novo." *Waupaca County v. K.E.K.*, 2021 WI 9, ¶16, 395 Wis. 2d 460, 954 N.W.2d 366 (citation omitted).  In this case, Sparby-Duncan raises an as-applied challenge, arguing that the statutes criminalizing the failure to install an IID and operating a motor vehicle with a PAC are unconstitutional as applied to him.

¶12    "As-applied challenges question the constitutionality of a statute 'on the facts of a particular case or [as applied] to a particular party.'"  *Mayo v. Wisconsin Injured Patients & Fams. Comp. Fund*, 2018 WI 78, ¶56, 383 Wis. 2d 1, 914 N.W.2d 678 (alteration in original) (citation omitted).  In an as-applied challenge, we presume that the statute is constitutional, but we do not presume that the State has applied the statute in a constitutional manner.  *Id.*  The party challenging the statute's constitutionality "must prove beyond a reasonable doubt that as applied to him or her the statute is unconstitutional." *Id.*, ¶58.

¶13   As noted above, Sparby-Duncan argues that the statutes criminalizing the failure to install an IID and operating a motor vehicle with a PAC are unconstitutional as applied to him because the IID and PAC charges in this case seek to impose criminal penalties on him based on his prior refusal of a warrantless blood draw.  Sparby-Duncan's argument in this regard rests on the United States Supreme Court's decision in *Birchfield* and the Wisconsin Supreme Court's subsequent decisions in *Dalton* and *Forrett*.  Accordingly, we begin by providing an overview of those cases.

## I. *Birchfield v. North Dakota*

¶14 In *Birchfield*, the United States Supreme Court addressed the validity of implied consent laws that "impose penalties on motorists who refuse to undergo testing when there is sufficient reason to believe they are violating the State's drunk-driving laws." *Birchfield*, 579 U.S. at 444. Specifically, the Court addressed whether such laws "violate the Fourth Amendment's prohibition against unreasonable searches" when they "go beyond" imposing civil penalties for a refusal to submit to a requested test and "make it a crime for a motorist to refuse to be tested after being lawfully arrested for driving while impaired." *Id.*

¶15 In answering this question, the *Birchfield* Court drew a distinction between breath tests and blood tests. The Court concluded that "the Fourth Amendment permits warrantless breath tests incident to arrests for drunk driving," reasoning that "[t]he impact of breath tests on privacy is slight, and the need for BAC testing is great." *Id.* at 474. Conversely, the Court concluded that the Fourth Amendment does not permit warrantless blood tests incident to arrests for drunk driving because "[b]lood tests are significantly more intrusive [than breath tests], and their reasonableness must be judged in light of the availability of the less invasive alternative of a breath test." *Id.*

¶16 "Having concluded that the search incident to arrest doctrine does not justify the warrantless taking of a blood sample," the *Birchfield* Court next addressed whether "such tests are justified based on the driver's legally implied consent to submit to them." *Id.* at 476. The Court acknowledged that "a search is reasonable when a subject consents" and that the Court's "prior opinions have referred approvingly to the general concept of implied-consent laws that impose

civil penalties and evidentiary consequences on motorists who refuse to comply." *Id.* at 476-77. The Court reasoned, however, that it is

> another matter … for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

*Id.* at 477.

¶17 The *Birchfield* Court stressed that the Fourth Amendment prohibits "unreasonable searches" and, as such, the relevant question is whether a warrantless blood draw is reasonable, since "reasonableness is always the touchstone of Fourth Amendment analysis." *Id.* at 455, 477. "[A]pplying this standard," the Court concluded "that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Id.* at 477.

**II.** *State v. Dalton*

¶18 The Wisconsin Supreme Court subsequently applied and expanded upon *Birchfield*'s holding in *Dalton*. Following a single-vehicle crash, Dalton refused a warrantless blood draw. *Dalton*, 383 Wis. 2d 147, ¶¶6-13. He later entered no-contest pleas to OWI, as a second offense, and operating after revocation. *Id.*, ¶19. During its sentencing remarks, the circuit court specifically addressed Dalton's refusal to submit to a blood draw, stating:

> The other thing you did is anybody who drives a motor vehicle in Wisconsin impliedly consents to a blood or breath draw after they're arrested. And you were arrested, and you disregarded that, and you will be punished for that today. You don't have the right not to consent. And that's going to result in a higher sentence for you.

8

*Id.*, ¶21.

¶19    On appeal, Dalton argued, among other things, that the circuit court had "erroneously exercised its discretion at sentencing" when it "impermissibly lengthened his sentence because he refused a warrantless blood draw, thereby violating" *Birchfield*. *Dalton*, 383 Wis. 2d 147, ¶55.  The Wisconsin Supreme Court agreed, concluding that the circuit court "violated *Birchfield* by explicitly subjecting Dalton to a more severe criminal penalty because he refused to provide a blood sample absent a warrant." *Id.*, ¶67.

¶20    The *Dalton* court reasoned that *Birchfield* "dictates that criminal penalties may not be imposed for the refusal to submit to a blood test," and "[a] lengthier jail sentence is certainly a criminal penalty." *Dalton*, 383 Wis. 2d 147, ¶59.  The court then concluded that the circuit court was "definitive in its intent to give Dalton a longer sentence for the sole reason that he refused to submit to a blood test," which was "a violation of *Birchfield*." *Id.*, ¶60.  Ultimately, the court stated that Dalton "was criminally punished for exercising his constitutional right" to refuse a warrantless blood draw, which is "impermissible" under "[e]stablished case law." *Id.*, ¶61 (citing cases for the proposition that a defendant cannot receive a harsher sentence solely because the defendant availed him- or herself of a constitutional right).

¶21    Thus, *Dalton* went beyond the United States Supreme Court's holding in *Birchfield*, which merely recognized that a warrantless blood draw is not reasonable for purposes of the Fourth Amendment when the state has threatened the individual with criminal, as opposed to civil, penalties for refusing. In contrast, *Dalton* recognized a "constitutional right" to refuse a warrantless blood draw. *Dalton*, 383 Wis. 2d 147, ¶61.

### III. *State v. Forrett*

¶22   Thereafter, in *Forrett*, the Wisconsin Supreme Court considered the constitutionality of Wisconsin's graduated-penalty scheme for OWI offenses in light of *Birchfield* and *Dalton*. *Forrett*, 401 Wis. 2d 678, ¶1. The court explained that under that statutory scheme, "[a] person's first OWI offense is generally a civil infraction," but "[s]ubsequent offenses are criminal and, depending on how many prior offenses a person has, may constitute a felony punishable by up to 10 years of initial confinement and 5 years of extended supervision." *Id.*, ¶7. The court further explained that under the relevant statutes, an individual's "total number of OWI offenses is determined by counting not only OWI convictions but also 'suspensions or revocations' of a person's driving privileges resulting from a 'refusal to submit to chemical testing,' provided the refusal and the conviction do not 'aris[e] out of the same incident or occurrence.'" *Id.* (alteration in original) (citations omitted). "Thus, a prior revocation that is not tied to an OWI conviction nevertheless threatens to increase the criminal penalties that may be imposed for a subsequent OWI conviction." *Id.*

¶23   The *Forrett* court noted that "[t]he OWI statutes treat refusing any type of chemical test the same, but the U.S. Supreme Court [in *Birchfield*] has drawn a key constitutional distinction between a warrantless test of a person's breath and a warrantless test of her blood." *Id.*, ¶8. Namely, under *Birchfield*, "a warrantless breath test is permissible as a reasonable search incident to an arrest but a warrantless blood draw is not." *Forrett*, 401 Wis. 2d 678, ¶8. Thus, according to the *Forrett* court, "for blood draws, the police must get a warrant, and when they do not have one, 'a person has a constitutional right to refuse' the request." *Id.* (quoting *State v. Prado*, 2021 WI 64, ¶47, 397 Wis. 2d 719, 960 N.W.2d 869, and citing *Birchfield*, 579 U.S. at 474-75). Consequently, the

*Forrett* court explained that a state cannot threaten or impose criminal penalties based on an individual's refusal of a warrantless blood draw because "a [s]tate may not impose a penalty upon those who exercise a right guaranteed by the Constitution." *Id.* (alteration in original) (quoting *Harman v. Forssenius*, 380 U.S. 528, 540 (1965)).

¶24 The *Forrett* court further stated that "[s]uch unconstitutional criminal penalties can take several forms." *Id.*, ¶9. "It could be that a person is criminally charged specifically for refusing a warrantless blood draw. Or, as was the case in *Dalton*, a person could be subjected to a longer sentence 'for the sole reason that he refused to submit to a [warrantless] blood test.'" *Id.* (alteration in original) (citations omitted). The *Forrett* court observed that "[t]hese two examples are illustrative but not exhaustive: No matter the form the criminal penalty takes, the State cannot impose such a penalty on a person because she exercised her Fourth Amendment right." *Id.*

¶25 The *Forrett* court then concluded that, under *Birchfield* and *Dalton*, it is unconstitutional "to increase the criminal penalty for a separate, subsequent OWI because, in a prior instance, the driver refused a warrantless blood draw." *Forrett*, 401 Wis. 2d 678, ¶10. The court reasoned that neither *Birchfield* nor *Dalton* "limited its holding to refusals related to the instant OWI charge," but, instead, "[b]oth cases rested on the idea that the state cannot criminalize the exercise of a constitutional right, and we see no reason why that rationale does not apply equally when the criminal penalty is imposed in a later case." *Forrett*, 401 Wis. 2d 678, ¶11. Based on *Birchfield* and *Dalton*, the *Forrett* court concluded that "it is unconstitutional in all circumstances to threaten criminal penalties for refusing to submit to a warrantless blood draw." *Forrett*, 401 Wis. 2d 678, ¶11. The court expressly noted, however, that "[t]here is no constitutional

11

issue … when a state imposes only 'civil penalties,' such as revoking a person's operating privileges, for refusing a warrantless blood draw." *Id.*, ¶8 n.5 (citing *Birchfield*, 579 U.S. at 476-77).

## IV. Sparby-Duncan's As-Applied Challenge

¶26 Based on *Birchfield*, *Dalton*, and *Forrett*, Sparby-Duncan argues that the PAC and IID charges in this case "are unconstitutional as applied to him because they rest on his prior refusal to submit to a warrantless blood draw in 2008." He contends that he "would not face either of these charges today but for his prior exercise of a constitutionally protected right" to refuse a warrantless blood draw. Citing *Forrett*, 401 Wis. 2d 678, ¶¶9-11, he asserts that a defendant "may not be penalized for exercising a constitutionally-protected right regardless of the form the criminal penalty takes and regardless of whether the penalty is only imposed in a separate, subsequent case." Accordingly, Sparby-Duncan claims that it is "impermissible" for the State to "threaten [him] with criminal penalties in the instant case because those penalties are available *solely* as a result of his prior exercise of his right to refuse a warrantless blood draw."

¶27 In response, the State does not dispute that the IID order against Sparby-Duncan could not have been imposed in the 2013 case absent his 2008 refusal. The State also does not dispute that, absent the IID order, Sparby-Duncan would not be subject to a PAC of 0.02. The State argues, however, that the IID and PAC charges do not threaten Sparby-Duncan with criminal penalties based on the 2008 refusal. Instead, the State argues that the charges seek to penalize Sparby-Duncan's violations of civil consequences that were lawfully imposed as a result of that refusal.

¶28    We agree with the State's analysis.  Under **Birchfield**, it is clear that the government may impose civil penalties on an individual for his or her refusal of a warrantless blood draw, and the threat of such civil penalties does not make the warrantless blood draw an unreasonable search for purposes of the Fourth Amendment.  **Birchfield**, 579 U.S. at 476-77.  Our supreme court recognized as much in **Forrett**.  *See* **Forrett**, 401 Wis. 2d 678, ¶8 n.5.  And that is precisely what occurred here.  Namely, as a result of Sparby-Duncan's 2008 refusal, the circuit court in his 2013 RCS case ordered him to install an IID in his vehicle, and as a result of that IID order, Sparby-Duncan is subject to a PAC of 0.02.  The current charges against Sparby-Duncan threaten him with criminal penalties for violating the IID order and driving with a PAC over 0.02, not for his 2008 refusal.  Nothing in **Birchfield**, **Dalton**, or **Forrett** prohibits the government from imposing criminal penalties on an individual for his or her violation of civil consequences that were imposed as a result of a refusal to submit to a warrantless blood draw.

¶29    Sparby-Duncan emphasizes that he would not be subject to an IID order or a 0.02 PAC *but for* his 2008 refusal.  Be that as it may, the State could not have charged Sparby-Duncan with the IID and PAC counts in this case *but for* his choices—made long after the refusal—to forgo installing the IID and to drive with a blood alcohol concentration above 0.02.  Again, we agree with the State that the current charges seek to impose criminal penalties for that later conduct, not for Sparby-Duncan's years-earlier refusal.  In other words, while Sparby-Duncan contends that the current charges are a direct result of his 2008 refusal, we instead conclude that the charges are sufficiently attenuated from the refusal such that they do not pose any constitutional issue under **Birchfield**, **Dalton**, and **Forrett**.

¶30    In arguing to the contrary, Sparby-Duncan notes that the defendant in **Forrett** made a choice to operate a motor vehicle while intoxicated long after

the refusal at issue in that case, but the Wisconsin Supreme Court nevertheless concluded that the refusal could not be used to increase the criminal penalty for the defendant's subsequent OWI offense. In particular, the ***Forrett*** court rejected the State's argument that the graduated-penalty scheme was constitutional because it "impose[d] no direct criminal punishment on the exercise of a constitutional right; it only consider[ed] that conduct for the purpose of increasing the punishment for a subsequent crime." *See **Forrett***, 401 Wis. 2d 678, ¶¶15-16. The court reasoned that "a person has a constitutional right to refuse a warrantless blood draw, so that refusal cannot be treated as an offense for the purposes of increasing the criminal penalty for a subsequent offense." ***Id.***, ¶16.

¶31 Here, however, the State is not seeking to treat Sparby-Duncan's 2008 refusal as an offense for purposes of increasing the criminal penalty for a subsequent offense. The State is instead seeking to impose criminal penalties on Sparby-Duncan for his violation of the IID order—a civil consequence of his refusal—and his operation of a vehicle with a PAC. ***Forrett*** did not involve an attempt to impose criminal penalties based on a defendant's violation of civil consequences of a refusal, and nothing in ***Forrett*** expressly prohibits the State from imposing criminal penalties under those circumstances.

¶32 Sparby-Duncan also emphasizes the language in ***Forrett*** stating that "it is unconstitutional in *all circumstances* to threaten criminal penalties for refusing to submit to a warrantless blood draw." ***Id.***, ¶11 (emphasis added). In addition, he notes that while the ***Forrett*** court listed two impermissible criminal penalties for refusing to submit to a warrantless blood draw—i.e., a standalone criminal charge for a refusal or an increased sentence for another charge based solely on the refusal—the court expressly stated that those two examples were "illustrative but not exhaustive" and that the State cannot impose criminal

penalties for the refusal of a warrantless blood draw *"[n]o matter the form the criminal penalty takes."* *Id.*, ¶9 (emphasis added). Thus, according to Sparby-Duncan, it is immaterial that the criminal penalties at issue in this case do not take the same form as those discussed in *Forrett*.

¶33 This argument, however, presupposes that the IID and PAC charges in this case seek to impose criminal penalties on Sparby-Duncan for his 2008 refusal. As we have already explained, the charges here instead seek to penalize Sparby-Duncan's subsequent acts of failing to install the IID that was ordered as a result of his 2008 refusal and driving with a PAC.

¶34 For all of these reasons, we reject Sparby-Duncan's argument that the IID and PAC statutes are unconstitutional as applied to him under the circumstances of this case. We therefore affirm the circuit court's order denying Sparby-Duncan's motion to dismiss the IID and PAC charges.

*By the Court.*—Order affirmed.

Recommended for publication in the official reports.